NO. 15-1202

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

GEISINGER COMMUNITY MEDICAL CENTER,

PLAINTIFF-APPELLANT,

v.

SYLVIA MATHEWS BURWELL, Secretary, Department of Health and Human
Services; MARILYN TAVENNER, Administrator, Centers for Medicare and
Medicaid Services; and ROBERT G. EATON, Chairman, Medicare Geographic
Classification Review Board

DEFENDANTS-APPELLEES.

On Appeal From The United States District Court
For The Middle District of Pennsylvania
Civil Action No. 3:14-1763
(Hon. Malachy E. Mannion, District Judge)

## BRIEF FOR APPELLANT
## GEISINGER COMMUNITY MEDICAL CENTER

Joseph D. Glazer
The Law Office of Joseph D. Glazer, P.C.
116 Village Boulevard, Suite 200
Princeton, New Jersey 08540
Telephone: (609) 951-2262
Facsimile: (609) 951-2263
jdg@jdglazerlaw.com

Mary Kay Brown
Brown Wynn McGarry Nimeroff LLC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (267) 861-5331
Facsimile: (267) 350-9050
mkbrown@bwmnlaw.com

*Attorneys for Appellant*
*Geisinger Community Medical Center*

**United States Court of Appeals for the Third Circuit**

**Corporate Disclosure Statement and
Statement of Financial Interest**

No. 15-1202

Geisinger Community Medical Center

v.

Sylvia Mathews Burwell, Secretary, et al.

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1,   Geisinger Community Medical Center
makes the following disclosure:                                    (Name of Party)

         1) For non-governmental corporate parties please list all parent corporations:

            Geisinger Health System Foundation

         2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None

         3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

None

         4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not applicable.

  /s/ Joseph D. Glazer_____       Dated:   February 2, 2015
(Signature of Counsel or Party)

## GLOSSARY OF ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| AHW | Average Hourly Wage |
| APCs | Ambulatory Payment Classifications |
| CBSAs | Core Based Statistical Areas |
| CMS | Centers for Medicare and Medicaid Services |
| CMS Administrator | Administrator of the Centers for Medicare and Medicaid Services |
| DRGs | Diagnosis-Related Groups |
| HHS | United States Department of Health & Human Services |
| IPPS | Inpatient Prospective Payment System |
| MedPAC | Medicare Payment Advisory Commission |
| MGCRB | Medicare Geographic Classification Review Board |
| MSAs | Metropolitan Statistical Areas |
| OMB | Office of Management and Budget |
| OPPS | Outpatient Prospective Payment System |
| RRC | Rural Referral Center |
| Secretary | Secretary, United States Department of Health & Human Services |
| Section 401 | Section 401 of the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999* ("Section 401"). Pub. L. No. 106-113, § 401, 113 Stat. 1501 (codified at 42 U.S.C. § 1395ww(d)(8)(E)) |

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

GLOSSARY OF ABBREVIATIONS AND ACRONYMS ................................. iv

TABLE OF AUTHORITIES ............................................................... vii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .......................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS........................... 2

STATEMENT OF THE CASE ............................................................... 2

STATEMENT OF FACTS ................................................................... 5

    I.    Statutory and Regulatory Background ........................................ 5

        A.   The Medicare Program.......................................................... 5

        B.   The Origin and a Partial History of the Wage Index ............................ 7

        C.   Reclassification by the MGCRB........................................... 8

        D.   Hospitals Redesignating Pursuant to Section 401 ................................ 10

    II.  Geisinger's Section 401 Status and MGCRB Applications ........................ 12

STATEMENT OF STANDARD/SCOPE OF REVIEW ...................................... 16

SUMMARY OF ARGUMENT ........................................................... 16

ARGUMENT ................................................................................. 18

    Geisinger is Entitled to the Relief it Seeks Because the Secretary's Regulatory
    Scheme is Illegal Pursuant to the Two-Step *Chevron* Analysis......................... 18

I.    The Secretary's Regulatory Scheme is Illegal under
      Step 1 of *Chevron*.................................................................. 19

      A. The Secretary's Regulatory Scheme is Illegal Based on the
         Unambiguous Language of Section 401 ........................................ 20

      B. The Secretary's Regulatory Scheme is Illegal Based on the
         Context of Section 401 ................................................... 28

      C. The Legislative History of Section 401 shows that the Secretary's
         Regulatory Scheme is Illegal ......................................... 32

II.   The Secretary's Regulatory Scheme is Illegal under
      Step 2 of *Chevron*.................................................................. 35

CONCLUSION ................................................................... 38

CERTIFICATE OF BAR MEMBERSHIP ......................................... 39

CERTIFICATE OF COMPLIANCE ................................................ 40

CERTIFICATE OF SERVICE......................................................... 41

# TABLE OF AUTHORITIES

<small>CASES</small>

*Barnhart v. Sigmon Coal Co., Inc.*,
   534 U.S. 438, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) .................................... 21

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*,
   464 U.S. 89, 104 S. Ct. 439, 78 L. Ed. 2d 195 (1983)....................................... 19

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)............................*passim*

*Corley v. United States*,
   556 U.S. 303, 129 S. Ct. 1559, 173 L. Ed. 2d 443 (2009) ................................ 22

*Diamond v. Chakrabarty*,
   447 U.S. 303, 100 S.Ct. 2204, 65 L. Ed. Ed 144 (1980)................................... 24

*Envtl. Def. v. Duke Energy Corp.*,
   549 U.S. 561, 127 S. Ct. 1423, 167 L. Ed. 2d 295 (2007) ........................... 35-36

*Farrell v. Planters Lifesaverfs Co.*,
   206 F.3d 271 (3d Cir. 2000) ............................................................. 16

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000)................................ 29

*Gen. Dynamics Land Sys., Inc. v. Cline*,
   540 U.S. 581, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004) .............................. 18

*GenOn REMA, LLC v. EPA,*
   722 F.3d 513 (3d Cir. 2013) ............................................................. 36

*Hewitt v. Helms*,
   459 U.S. 460, 103 S. Ct. 864, 74 L .Ed. 2d 675 (1983)................................... 25

*In re Phila Newspapers, LLC*,
   599 F.3d 298 (3d Cir. 2010) ..........................................................19, 24, 30

*Khazin v. TD Ameritrade Holding Corp.*,
 773 F.3d 488 (3d Cir. 2014) ............................................................ 25

*Lawrence and Memorial Hospital v. Sebelius*,
 Docket No., 15-164 *pending before the Second Circuit* (2015)........................... 2

*Lawson v. FMR LLC*,
 ___ U.S. ___, 134 S. Ct. 1158, 188 L. Ed. 2d 158 (2014) ...................... 21, 32-33

*Montone v. City of Jersey City*,
 709 F.3d 181 (3d Cir. 2013) ............................................................ 16

*Port Auth. Trans-Hudson Corp. v. Secretary*,
 2015 WL 178459 (3d Cir. Jan. 15, 2015)........................................... 19

*Rosenberg v. XM Ventures*,
 274 F.3d 137 (3d Cir. 2001) ............................................................ 22

*United States v. Geiser*,
 527 F.3d 288 (3d Cir. 2008) ............................................................ 32

*United States v. McGee*,
 763 F.3d 304 (3d Cir. 2014) ............................................................ 36

*United States v. Monsanto*,
 491 U.S. 600, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989) ................................ 25

*Util. Air Regulatory Grp. v. E.P.A*,
 ___ U.S. ___, 134 S. Ct. 2427 (2014) ............................................... 25

## FEDERAL STATUTES

5 U.S.C. § 701 *et seq.* ............................................................ 1

28 U.S.C. § 1291................................................................... 1

28 U.S.C. § 1331................................................................... 1

28 U.S.C. § 1361................................................................... 1

28 U.S.C. § 2201 ................................................................................. 1

28 U.S.C. § 2202 ................................................................................. 1

42 U.S.C. § 1395i-4(c)(2)(B)(i) ........................................................ 11

42 U.S.C. § 1395*l*(t) ....................................................................... 6, 11

42 U.S.C. § 1395ww(d) ("Subsection (d)") .................................... *passim*

42 U.S.C. § 1395ww(d)(2)(A)-(B) ..................................................... 5

42 U.S.C. § 1395ww(d)(2)(D) ...................................................... 26. 37

42 U.S.C. § 1395ww(d)(2)(H) ....................................................... 6, 8

42 U.S.C. § 1395ww(d)(3)(E) ................................................. 6, 7, 8, 23

42 U.S.C. § 1395ww(d)(4) ................................................................ 6

42 U.S.C. § 1395ww(d)(8) ............................................................... 10

42 U.S.C. § 1395ww(d)(8)(c) .......................................................... 23

42 U.S.C. § 1395ww(d)(8)(E) .................................................... *passim*

42 U.S.C. § 1395ww(d)(10) ...................................................... 3, 8, 23

42 U.S.C. § 1395ww(d)(10)(C)(i) .................................................... 26

42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) ............................................. 10

42 U.S.C. § 1395ww(d)(13) ............................................................ 23

*Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999*,
    Pub. L. No. 106-113, § 401, 113 Stat. 1501 ("Section 401") ..................... *passim*

**FEDERAL REGULATIONS**

42 C.F.R. § 412.103 ...................................................................................... 12

42 C.F.R. § 412.230 ...................................................................................... 34

42 C.F.R. § 412.230(a)(3) ............................................................................... 9

42 C.F.R. § 412.230(a)(5)(iii) ...................................................................... 4-5, 12

42 C.F.R. § 412.230(b)(1) ............................................................................9, 13

42 C.F.R. § 412.230(d)(1)(iii)(C) .................................................................... 9

42 C.F.R. § 412.230(d)(1)(iv)(E) ..................................................................9, 13

42 C.F.R. § 412.274 ........................................................................................ 8

**FEDERAL REGISTER**

*Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. & Fiscal Year 2005 Rates*, 69 FR 48,916 (Aug. 11, 2004) ...................................... 7

*Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. & Fiscal Year 2006 Rates*, 70 FR 47,278 (Aug. 12, 2005) .................................. 34

*Medicare Program; Prospective Payments for Medicare Inpatient Hosp. Servs.*, 48 FR 39,752 (Sept. 1, 1983) ............................................................................ 7

**OTHER SOURCES**

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) ................................*passim*

*In the Case of Moses Taylor Hosp.*, Decision of the Admin. (Apr. 27, 2013) 2013 WL 2470295 ..................................................................................... 34-35

*In the Case of Regional Hosp. of Scranton*, Decision of the Admin. (Apr. 27, 2013) 2013 WL 2470296 ..................................................................................... 34-35

*MedPAC: Report to the Congress: Promoting Greater Efficiency in Medicare* (June 2007), http://www.medpac.gov/documents/Jun07_EntireReport.pdf ............................... 8

Third Circuit Local Appellate Rule 28.1(b)......................................................... 16

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The Complaint asserts claims against defendants-appellees for alleged violations of the Social Security Act and the Administrative Procedure Act. (A038-063). Appellant appeals the final judgment entered by the District Court on December 22, 2014 that disposed of all claims. (A033). Appellant filed a Notice of Appeal in the District Court on January 20, 2015. (A001-002). The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361 and 5 U.S.C. § 701 *et seq.* The District Court had jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The following issues are presented to this Court for review. The issues were identified in the Complaint filed with the District Court (A038-063) and briefed by the parties in their respective motions for summary judgment.

1. Whether the Department of Health and Human Services' regulations regarding the treatment of Section 401 hospitals in the Medicare Geographic Classification Review Board process violate the Social Security Act and the Administrative Procedure Act.

2. Whether a permanent injunction, an order of mandamus, or both, should issue:

   a. prohibiting defendants-appellees from applying to appellant Geisinger Community Medical Center the regulatory scheme adopted by the Department of Health and Human Services, and

b. ordering defendants-appellees to apply the standards applicable to rural hospitals and Rural Referral Centers when reviewing and deciding Geisinger Community Medical Center's geographic reclassification applications to the Medicare Geographic Classification Review Board.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case presents an issue of first impression in this Circuit. Appellant is unaware of any case in this Circuit involving the same issues as those raised in this appeal. A case pending in the United States Court of Appeals for the Second Circuit involves similar issues. That case, *Lawrence & Memorial Hospital v. Sebelius*, Docket No. 15-164, was initially filed in the United States District Court for the District of Connecticut. The Law Office of Joseph D. Glazer, P.C., co-counsel for the appellant hospital in the case before this Court, is also co-counsel for Lawrence & Memorial Hospital in the matter pending before the Second Circuit.

## STATEMENT OF THE CASE

This case involves a common process by which hospitals located in one geographic wage index area for Medicare reimbursement purposes are able to reclassify to another wage index area. The wage index a hospital receives is an important component of Medicare reimbursement. Each year hundreds of hospitals are approved to reclassify from one wage index area to another. *See* A300-306, Exhibit 3 to the Declaration of Joseph Glazer filed with the District Court in

Opposition to Defendants' Motion for Summary Judgment and in Further Support of Plaintiff's Motion for Summary Judgment ("Glazer Opposition Declaration").

The Medicare Geographic Classification Review Board ("MGCRB") is a body within the United States Department of Health and Human Services ("HHS") that rules on hospital applications to reclassify to a different geographic area for purposes of computing certain Medicare payments. 42 U.S.C. § 1395ww(d)(10). By applications dated August 28, 2014, Geisinger Community Medical Center ("Geisinger") filed two applications with the MGCRB: a primary application to reclassify to the Allentown-Bethlehem-Easton, PA-NJ Core Based Statistical Area (the "Allentown CBSA") and a secondary application, in case the primary application is denied, to reclassify to the East Stroudsburg, PA CBSA (the "East Stroudsburg CBSA"). (A112, A129-194, Declaration of Edward A. Chabalowski ("Chabalowski Declaration"), ¶ 12, Exhibits 5 and 6).

Section 401 of the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999*[1] ("Section 401") created a mechanism by which some hospitals located in urban areas can be treated as being located in a rural area for certain aspects of Medicare reimbursement. If a hospital qualifies, "the Secretary

---

[1] Pub. L. No. 106-113, § 401, 113 Stat. 1501 (codified in part at 42 U.S.C. § 1395ww(d)(8)(E)).

shall treat the hospital as being located in the rural area … of the State in which the hospital is located" for three specific purposes:

1. <u>Inpatient</u> reimbursement under Subsection (d). *See* Section 401(a);

2. <u>Outpatient</u> reimbursement. *See* Section 401(b)(1), and

3. Determining whether a hospital qualifies for special designation as a Critical Access Hospital. *See* Section 401(b)(2).

Geisinger applied for Section 401 status and was designated a Section 401 hospital. (A111-112, A116-120, <u>Chabalowski Declaration</u>, ¶¶ 8 and 9, Exhibits 1 and 2).

In the conference report accompanying Section 401, Congress highlighted certain benefits of an urban hospital qualifying under Section 401:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area. The Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999).

The Secretary of HHS refuses to treat a Section 401 hospital like hospitals located in rural areas. The Secretary's regulations provide that a Section 401 hospital "cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. §

4

412.230(a)(5)(iii). Thus, according to the Secretary, the MGCRB cannot reclassify a Section 401 hospital to a different geographic area for any year the hospital has Section 401 status. A Section 401 hospital must cancel that status to have any application considered by the MGCRB.

By Complaint filed September 10, 2014, Geisinger sought a permanent injunction, an order of mandamus, or both, prohibiting defendants-appellees from applying the Secretary's regulatory scheme to Geisinger and ordering defendants-appellees to apply the rural standards when considering Geisinger's applications pending before the MGCRB. (A038-063). The parties filed cross-motions for summary judgment. On December 22, 2014, the District Court issued a Memorandum (A003-030), Order (A031-032), and Judgment (A033) denying Geisinger's motion for summary judgment and granting defendants-appellees motion for summary judgment.

## STATEMENT OF FACTS

### I.  Statutory and Regulatory Background

#### A. The Medicare Program

Hospitals participating in Medicare generally are paid under an inpatient prospective payment system ("IPPS"). 42 U.S.C. § 1395ww(d). Calculating IPPS rates begins with a standard nationwide rate based on average operating costs of inpatient hospital services. 42 U.S.C. § 1395ww(d)(2)(A)-(B). Because labor costs

vary, CMS determines the proportion of the standardized amount attributable to wages and wage-related costs, and multiplies that proportion by a "wage index" that reflects the relation between the local average of hospital wages and the national average. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E). A third variable reflects the disparate hospital resources required to treat major and minor illnesses. Medicare inpatients are classified into groups based on diagnosis, and each of these "diagnosis-related groups" (DRGs) is assigned a particular "weight" representing the relationship between the cost of treating patients within that group and the average cost of treating all Medicare patients. *See* 42 U.S.C. § 1395ww(d)(4).

A comparable system, commonly known as the Hospital Outpatient Prospective Payment System (OPPS), exists for Medicare outpatient payments to hospitals. Payment amounts for each outpatient Ambulatory Payment Classification (APC) are based on CMS's estimates of the costs associated with providing services assigned to an APC. Payments for procedures are adjusted for geographic wage variations: 60% of the APC amount is multiplied by the wage index and added to the remaining 40% of the APC amount. *See* 42 U.S.C. § 1395*l*(t).

Thus, the wage index is a significant factor in determining a hospital's reimbursement under both the IPPS system and the OPPS system.

### B. The Origin and a Partial History of the Wage Index

Congress recognized that hospitals' labor costs vary widely depending on geographic location and the market in which the hospitals compete for labor. In 42 U.S.C. § 1395ww(d)(3)(E), Congress required an adjustment to the federal reimbursement rate to account for such wage differences:

> [t]he Secretary shall adjust the proportion … of hospitals' costs which are attributable to wages and wage-related costs … for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

The wage index adjustment is recomputed annually to reflect changes in local labor costs compared to the national average. Hospitals in areas with labor costs above the national average receive a higher reimbursement rate, while hospitals in areas with lower labor costs receive a lower rate. 42 U.S.C. § 1395ww(d)(3)(E).

In 1983, the Secretary established hospital labor markets by grouping hospitals according to Metropolitan Statistical Areas ("MSAs"). Hospitals in the county or counties that make up an MSA are grouped together and treated as a single labor market for wage index purposes. *See Medicare Program; Prospective Payments for Medicare Inpatient Hosp. Servs.*, 48 FR 39,752, 39766 (Sept. 1, 1983). Following the 2000 census, CMS adopted Core Based Statistical Areas (CBSAs) to replace MSAs. *See Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. & Fiscal Year 2005 Rates*, 69 FR 48,916, 49049 (Aug. 11, 2004).

7

The Secretary determines a separate wage index for each CBSA, and one wage index per state for rural areas. A hospital's wage index is the wage index the Secretary assigns to the area where the hospital is physically located. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E). Whether a hospital is considered located in an urban area or rural area can significantly impact a hospital's Medicare reimbursement.

Congress recognized that CBSA classifications do not adequately measure hospital labor market differences and enacted measures to eliminate some inequities by allowing hospitals to reclassify to other CBSAs and receive the other area's wage index. These corrections have generally been based on hospitals demonstrating proximity to another wage index area and demonstrating that their costs are comparable to that proximate market. These actions have provided relief from the Secretary's strict reliance on political boundaries (county lines) to define hospital labor markets. More than one-third of all hospitals paid under the IPPS system receive a modified wage index enabled by one or more of the adjustments provided by Congress. *MedPAC: Report to the Congress: Promoting Greater Efficiency in Medicare* (June 2007) at 129, www.medpac.gov/documents/jun07_entire report.pdf.

### C. Reclassification by the MGCRB

In 1989, Congress established the MGCRB to decide hospitals' requests to receive another area's wage index. 42 U.S.C. § 1395ww(d)(10). Reclassifications are valid for three years. 42 C.F.R. § 412.274.

A hospital generally must show three things to reclassify: (1) its wages are higher than other hospitals in the area the applicant is located; (2) its wages are comparable to hospitals in the area to which the applicant seeks to reclassify; and (3) it is proximate to that area. For the first element, the hospital's three-year average hourly wage ("AHW") must be at least 108% of the AHW of the area in which the hospital is located if the hospital is located in an urban area or 106% if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iii)(C). For the second element, the hospital's three-year AHW must be at least 84% of the AHW of the area to which the hospital is applying if the hospital is located in an urban area or 82% if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iv)(E). For the third element, the hospital must be within 35 miles of the area to which it is applying if the hospital is located in a rural area, or within 15 miles if the hospital is located in an urban area. 42 C.F.R. § 412.230(b)(1).

Thus, whether a hospital is located in an urban area or a rural area can be very important for the MGCRB application and reclassification process.

Medicare recognizes hospitals with "special" status, including rural referral centers (RRCs). An RRC need not demonstrate close proximity to the area to which it seeks reclassification. 42 C.F.R. § 412.230(a)(3). Also, any hospital that was ever an RRC is exempt from the 108% requirement of 42 C.F.R. § 412.230(d)(1)(iii)(C). Thus, RRCs are exempt from two of the three tests for MGCRB reclassification.

MGCRB decisions may be appealed to the Secretary, who has designated the CMS Administrator to hear appeals. The Secretary's decision "shall be final and shall not be subject to judicial review." 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).

### D. Hospitals Redesignating Pursuant to Section 401

Congress enacted Section 401 in 1999, creating a mechanism by which some hospitals located in urban areas could be treated as being located in a rural area for purposes of Medicare reimbursement. Section 401 provides in full as follows:

SEC. 401. PERMITTING RECLASSIFICATION OF CERTAIN URBAN HOSPITALS AS RURAL HOSPITALS.

   (a)  In General.--Section 1886(d)(8) (42 U.S.C. 1395ww(d)(8)) is amended by adding at the end the following new subparagraph:

"(E)(i) For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

"(ii) For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

"(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).

"(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

10

"(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

"(IV) The hospital meets such other criteria as the Secretary may specify.".

(b)  Conforming Changes.--(1) Section 1833(t) (42 U.S.C. 1395l(t)), as amended by sections 201 and 202, is further amended by adding at the end the following new paragraph:

"(13) Miscellaneous provisions.--

"(A) Application of reclassification of certain hospitals.--If a hospital is being treated as being located in a rural area under section 1886(d)(8)(E), that hospital shall be treated under this subsection as being located in that rural area.".

(2) Section 1820(c)(2)(B)(i) (42 U.S.C. 1395i-4(c)(2)(B)(i)) is amended, in the matter preceding subclause (I), by inserting "or is treated as being located in a rural area pursuant to section 1886(d)(8)(E)" after "section 1886(d)(2)(D)).".

(c)  Effective Date.--The amendments made by this section shall become effective on January 1, 2000.

Thus, a hospital located in an urban area qualifies to be treated as if it were located in a rural area if the hospital meets one of several criteria, including if the hospital would qualify as an RRC. Geisinger meets the criteria to qualify as an RRC. (A112, A122-127, <u>Chabalowski Declaration</u>, ¶¶ 10 and 11, Exhibits 3 and 4).

Section 401 uses mandatory language. If a hospital qualifies under Section 401, "the Secretary shall treat the hospital as being located in the rural area … of the State in which the hospital is located" for the three areas set forth in Section 401:

1. <u>Inpatient</u> reimbursement under Subsection (d). *See* Section 401(a);

2. <u>Outpatient</u> reimbursement. *See* Section 401(b)(1), and

3. Determining <u>Critical Access Hospital eligibility</u>. *See* Section 401(b)(2).

In the conference report accompanying Section 401, Congress explained that the benefits of a hospital qualifying under Section 401 would be very broad:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. **Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area. The Board shall regard such hospitals as rural** and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added).

Nonetheless, the Secretary adopted regulations providing that "[a]n urban hospital that has been granted redesignation as rural under §412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 412.230(a)(5)(iii). Stated differently, under the Secretary's regulations a Section 401 hospital cannot be reclassified by the MGCRB to a different CBSA for any year the hospital maintains Section 401 status.

**II. Geisinger's Section 401 Status and MGCRB Applications**

Geisinger applied to be designated a Section 401 hospital and was approved effective June 11, 2014. (A111-112, A116-120, <u>Chabalowski Declaration</u>, ¶¶ 8 and

9, Exhibits 1 and 2). Geisinger requested to be designated an RRC and was approved effective July 1, 2014. (A112, A121-127, <u>Chabalowski Declaration</u>, ¶¶ 10 and 11, Exhibits 3 and 4).

Geisinger submitted two applications to the MGCRB as allowed by MGCRB rules: a primary application to reclassify to the Allentown CBSA and a secondary application to reclassify to East Stroudsburg CBSA. The primary application signals Geisinger's preferred CBSA for reclassification; the secondary application is the desired CBSA if the primary application is denied. (A112, A129-194, <u>Chabalowski Declaration</u>, ¶ 12, Exhibits 5 and 6). The hospital satisfies the requirements for reclassification to either CBSA based on the general rules applicable to hospitals located in rural areas. (A114, <u>Chabalowski Declaration</u>, ¶ 20).

The distance between the hospital and the Allentown CBSA is approximately 27 miles. The distance between the hospital and the East Stroudsburg CBSA is approximately 15.8 miles. (A114, A137, A161, <u>Chabalowski Declaration</u>, ¶¶ 18 and 19, Exhibits 5 and 6). Thus, Geisinger satisfies the proximity requirement set forth at 42 C.F.R. § 412.230(b)(1) for hospitals located in the rural area of a State.

Geisinger's three-year AHW is 86.38% of the Allentown CBSA AHW, and 86.45% of the East Stroudsburg CBSA. (A153, A194, <u>Chabalowski Declaration</u>, Exhibits 5 and 6). Thus, the hospital satisfies the element at 42 C.F.R. § 412.230(d)(1)(iv)(E).

13

Geisinger's three-year AHW is 96.51% of the AHW of the Scranton-Wilkes-Barre-Hazelton, PA CBSA, where the hospital is physically located, and 101.28% of the AHW of the Pennsylvania rural area, where the hospital is required to be treated as being located pursuant to Section 401. (A153, Chabalowski Declaration, Exhibits 5 and 6). As an RRC, however, the hospital is exempt from this requirement.

Geisinger believes it is entitled to maintain Section 401 status and still reclassify to the Allentown CBSA, the East Stroudsburg CBSA, or any other CBSA for which Geisinger satisfies the reclassification requirements. If the MGCRB treats Geisinger as located in the rural area of the State and an RRC, Geisinger will satisfy all requirements to reclassify to either the Allentown CBSA or the East Stroudsburg CBSA. (A114, Chabalowski Declaration, ¶ 20). Pursuant to the Secretary's regulatory scheme, however, the MGCRB will not treat Geisinger as located in a rural area and will deny Geisinger's applications.

Left with no choice but to try to comply with the Secretary's illegal regulatory scheme or lose millions of dollars of reimbursement, Geisinger cancelled its Section 401 status. (A113, A195-196, Chabalowski Declaration, ¶¶ 15 and 16, Exhibit 7). Based on precedent and the rules governing the MGCRB process, because Geisinger cancelled its rural status (to be effective October 1, 2015), the MGCRB should approve Geisinger's secondary application to be reclassified by the MGCRB to the

East Stroudsburg CBSA. Because an MGCRB approval is valid for only three years, Geisinger will have to regularly repeat the burdensome and costly process of transitioning to Section 401 status, maintaining that status for at least one twelve month cost reporting period, and cancelling that status.

Even with cancellation of Section 401 status, the MGCRB will not approve Geisinger's application to reclassify to its <u>primary</u> destination of the Allentown CBSA. The only review of an MGCRB decision is by the CMS Administrator, who is also bound by the Secretary's regulations. There is no judicial review of the CMS Administrator's decision. Geisinger estimates that denial of its application to reclassify to the Allentown CBSA will cost the hospital millions of dollars of Medicare reimbursement. (A113, <u>Chabalowski Declaration</u>, ¶¶ 13).

By Complaint filed September 10, 2014, Geisinger sought a permanent injunction, an order of mandamus, or both, prohibiting defendants-appellees from applying the Secretary's regulatory scheme to Geisinger and ordering defendants-appellees to apply the rural standards when considering Geisinger's applications pending before the MGCRB. (A038-063). Each party moved for summary judgment. On December 22, 2014, the District Court issued a Memorandum (A003-030), Order (A031-032), and Judgment (A033) denying Geisinger's motion and granting defendants-appellees' motion.

## STATEMENT OF STANDARD/SCOPE OF REVIEW

This case involves resolution by the courts of questions of law decided by the District Court on motions for summary judgment. This Court reviews the District Court's legal conclusions and grant of summary judgment *de novo*. 3d Cir. L.A.R. 28.1(b); *see also Montone v. City of Jersey City,* 709 F.3d 181, 189 (3d Cir. 2013) (citations omitted) *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) ("We exercise plenary review over summary judgment and we apply the same standard that the lower court should have applied.").

## SUMMARY OF ARGUMENT

At the core of this case is the vital issue of the separate and distinct roles of Congress, in enacting legislation, and administrative agencies, in implementing such legislation. In this case, the Secretary and other defendants-appellees impermissibly seek to restrict the operation of a statute (Section 401) enacted by Congress. Defendants-appellees disagree with Section 401 and are committed to rewriting the statute through administrative regulation and action. In doing so, defendants-appellees ignore Section 401, which is clear on its fact and in its intent, and they illegally deny hospitals rights granted by that statute.

When considering a challenge to an agency's interpretation of a statute, courts use the two-step analysis laid out by the United States Supreme Court. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L.

Ed. 2d 694 (1984) ("*Chevron*"). The first step involves the court determining whether Congress has spoken directly to the issue. If Congress has spoken clearly on the issue, then that is the end of the Court's inquiry. Courts only proceed to the second step of *Chevron* if Congress was silent or ambiguous with respect to the issue. Even at Step 2, courts reject an administrative agency's interpretation of a statute if it is arbitrary, capricious, or manifestly contrary to the statute.

Section 401 is clear and unambiguous. Section 401(a) adds a new section to the Medicare Act and requires the Secretary to treat a Section 401 hospital as located in the rural area of the State "For purposes of this subsection." The subsection to which the statute refers is Subsection (d) of the Medicare Act. Subsection (d) includes the rules for paying Subsection (d) hospitals, like Geisinger, for inpatient services, including the wage index and MGCRB reclassification process. By requiring the Secretary to treat a Section 401 hospital as located in the rural area of the State for all purposes under Subsection (d), including the MGCRB reclassification process, Congress has spoken clearly and unambiguously.

Even if one were to conclude that Congress had not spoken directly in the statute to the matter at issue, the Secretary's regulatory scheme would be illegal. The Conference Report shows that Congress intended hospitals that have Section 401 status to be able to apply to the MGCRB and to have any such applications evaluated under the standards applicable to rural hospitals.

17

## ARGUMENT

### Geisinger is Entitled to the Relief it Seeks Because the Secretary's Regulatory Scheme is Illegal Pursuant to the Two-Step *Chevron* Analysis.

Courts use a two-step analysis when considering a challenge to an agency's interpretation of a statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ("*Chevron*"). A court first determines whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. A court only moves to Step 2 if the statute "is silent or ambiguous with respect to the specific issue." *Id.* at 843. At Step 2, the court defers to the agency's construction of a statute unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

An agency's interpretation of a statute is not entitled to deference in Step 1. Deference is called for "only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004). Even in Step 2, courts must not simply "rubber-stamp" agency action:

> the 'deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.' Accordingly, while reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act, they must not 'rubber-stamp...administrative

> decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.'

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 97, 104 S. Ct. 439, 78 L. Ed. 2d 195 (1983) (citations omitted).

## I. The Secretary's Regulatory Scheme is Illegal under Step 1 of *Chevron.*

A court's first task is to determine whether "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. As this Circuit recently stated, "[t]he best evidence of the purpose of a statute is the statutory text adopted by both Houses of Congress." *Port Auth. Trans-Hudson Corp. v. Secretary*, 2015 WL 178459 (3d Cir. Jan. 15, 2015). Where the language of the statute is clear, a court's inquiry is complete. *In re Phila. Newspapers, LLC,* 599 F.3d 298, 304 (3d Cir. 2010). As the Supreme Court stated in *Chevron*, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional rules of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843, n. 9 (citations omitted). In the case before this Court, Congress's intent is clear.

### A. The Secretary's regulatory scheme is illegal based on the unambiguous language of Section 401.

Section 401 contains Congress's clear and unambiguous direction as to the three specific areas the Secretary must treat a Section 401 hospital as being located in the rural area of the State. The three areas are:

1. Inpatient reimbursement for hospitals (including Geisinger) paid under Subsection (d) of the Medicare Act. Section 401(a);

2. Outpatient reimbursement for such hospitals. Section 401(b)(1), and

3. Determining eligibility for Critical Access Hospital status. Section 401(b)(2).

It is helpful to look closely at each part of Section 401. Section 401(a) adds a new section to the Medicare Act and requiring the Secretary to treat a Section 401 hospital as located in the rural area of the State "For purposes of this subsection." The subsection to which the statute refers is Subsection (d) of the Medicare Act.[2] Subsection (d) includes the rules for paying Subsection (d) hospitals, like Geisinger, for inpatient services, including the wage index and the MGCRB reclassification process.

Section 401(b)(1) specifically amends outpatient payment rules for hospitals like Geisinger. Section 401(b)(1) provides in part: "If a hospital is being treated as

---

[2] Subsection (d) is Section 1886(d) of the Social Security Act, which is codified at 42 U.S.C. 1395ww(d). *See* A253-295, where the text of Subsection (d) is replicated at Exhibit 1 Glazer Opposition Declaration.

being located in a rural area under section 1886(d)(8)(E), that hospital shall be treated under this subsection as being located in that rural area." The wage index is also a critical component of outpatient reimbursement.

Section 401(b)(2) amends a section of the Medicare Act governing eligibility for Critical Access Hospital status. That status is only available to certain hospitals in rural areas. Section 401(b)(2) provides that hospitals can qualify for such status if the hospital "is treated as being located in a rural area pursuant to section 1886(d)(8)(E)," assuming the hospital meets other eligibility criteria.

Thus, by its explicit terms, Section 401 directs the Secretary to apply Section 401 to three specific areas: (1) inpatient reimbursement set forth in Subsection (d) for hospitals like Geisinger, (2) outpatient reimbursement for such hospitals, and (3) when determining eligibility for Critical Access Hospital status.

The Supreme Court has said "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62, 122 S. Ct. 941, 956, 151 L. Ed. 2d 908 (2002) (citations omitted); *see also Lawson v. FMR LLC*, 134 S. Ct. 1158, 1166, 188 L. Ed. 2d 158 (2014) ("Absent any textual qualification, we presume the operative language means what it appears to mean."). In Section 401(a), Congress commands the Secretary to treat a Section 401 hospital "[f]or purpose of this subsection" as "being located in the rural area…of the State in which the hospital

is located." Rather than leaving the Secretary to guess or use her own discretion as to how to apply Section 401(a), Congress chose the phrase "[f]or purposes of this subsection." That phrase must be given meaning by the Secretary and this Court. To do otherwise would be "at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566, 173 L. Ed. 2d 443 (2009) (internal citations and quotation marks omitted). As this Court has explained: "when interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). Congress meant what it said – Section 401 applies to the entire subsection referenced in Section 401. To conclude otherwise would be to ignore the statutory language and mandate.

The subsection referenced in Section 401(a) is Section 1886(d) of the Social Security Act, which is codified at 42 U.S.C. 1395ww(d) (generally referred to as "Subsection (d)"). Subsection (d) includes a wide range of inpatient payment provisions applicable to Subsection (d) hospitals. Those payment provisions include diagnosis related group ("DRG") prospective payments, additional payments for hospitals that treat a disproportionate share of low income patients, additional

payments known as outlier payments for cases that utilize an unexpectedly high level of resources, and many other provisions.

Critical to the case before this Court, Subsection (d) also includes the requirements for wage index adjustments and the process for hospitals to be classified by the MGCRB to another area for purposes of receiving that area's wage index factor. *See, e.g.,* A250-252, <u>Glazer Opposition Declaration</u>, Exhibit 1 at 10 (A262) (Section 1886(d)(3)(E) requires the Secretary to adjust payments for area differences in hospital wage levels); A283**,** *Id.* at 31 (Section 1886(d)(8)(C) contains requirements and limitations to prevent a hospital reclassifying to another wage area from negatively impacting that area); A292-293**,** *Id.* at 40-41 (Section 1886(d)(13) requires the Secretary to establish a process for hospitals to increase their wage index based on the outmigration of hospital employees in that county to any higher wage index area); A288-291**,** *Id.* at 36-39 (Section 1886(d)(10) establishes the MGCRB and the MGCRB reclassification process).

Subsection (d) contains dozens of paragraphs and subparagraphs, each addressing different aspects of Medicare inpatient reimbursement for Subsection (d) hospitals. How can Congress modify or amend each and every one of those paragraphs and subparagraphs? If Congress wanted Section 401 to apply to each and every one of those paragraphs and subparagraphs contained in Subsection (d), the most clear and unambiguous way to do so is to state that Section 401 applies to the

entire subsection. Congress did just that with its language: "[f]or purposes of this subsection." The phrase cannot have any meaning or purpose other than to require that Section 401 apply to all of Subsection (d). The only effective way for Congress to accomplish its objective of ensuring that Section 401 applied to the entire subsection was by using broad and inclusive language. There is simply no other practical way for Congress legislate. As this Court has explained: "In employing intentionally broad language, Congress avoids the necessity of spelling out in advance every contingency to which a statute could apply." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 310 (3d Cir. 2010). The Supreme Court has noted that broad or comprehensive language used by Congress is not indicative of ambiguity "when congressional objectives require broad terms." *Diamond v. Chakrabarty*, 447 U.S. 303, 315, 100 S.Ct. 2204, 65 L. Ed. Ed 144 (1980). Here, Congress intended Section 401 status to apply to all of Subsection (d), and it said so.

Had Congress intended the phrase "[f]or purposes of this subsection" to be anything other than comprehensive, Congress would have noted the paragraphs of Subsection (d) that were excluded. For example, if Congress intended to exclude the MGCRB process, Congress would have noted that Section 401 hospitals are treated as being located in the rural area of the State "for purposes of this subsection, *except paragraph 1886(d)(10)*." That sort of limitation is conspicuously absent from the statute. The Secretary may not create that type of limitation where Congress did not.

This fundamental principle at the heart of the separation of powers was recently reaffirmed by the Supreme Court: "We reaffirm the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regulatory Grp. v. E.P.A.,* 134 S. Ct. 2427, 2446 (2014). Indeed, this Circuit recently cited *Util. Air Regulatory Grp. v. E.P.A.*, on this important issue: "[a]n agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms." *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 495 (3d Cir. 2014) (citation omitted).

The mandatory nature of the command in Section 401 is shown by other language Congress chose in Section 401. For example, Section 401 states that the Secretary "shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located." The Supreme Court has held in any number of contexts that "shall" is "explicitly mandatory" language. *See, e.g., United States v. Monsanto,* 491 U.S. 600, 607, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989) ("Congress could not have chosen stronger words [than 'shall order forfeiture'] to express its intent that forfeiture be mandatory...."); *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983) ("[The Commonwealth] has used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed" with regard to placing inmate in administrative segregation.). Thus, if a hospital satisfies the Section 401 criteria (as

Geisinger does), the Secretary <u>must</u>, for the three broad areas set forth in Section 401, treat the hospital as though the hospital is located in the rural area of the state. There is no discretion.

Section 401 is equally clear in terms of what "rural area" means, referring to the definition of "rural area" contained in "paragraph (2)(D)." "Rural area" is defined in paragraph (2)(D) as any area outside an urban area. 42 U.S.C. § 1395ww(d)(2)(D). Section 401, thus, amends the definition of "rural area" contained at 42 U.S.C. § 1395ww(d)(2)(D) to include facilities that qualify under Section 401. Taken together, the mandatory language of Section 401 and reference to the definition of "rural area" require that a Section 401 hospital be treated as though it were a hospital located in a rural area. There is <u>no</u> qualifying language in Section 401 that limits the term "rural area" or restricts a hospital from receiving any benefits to which hospitals located in rural areas are entitled under Subsection (d).

The Secretary's regulations, however, require the MGCRB to reject any application by a Section 401 hospital, unless the hospital gives up its Section 401 status. In effect, the Secretary's regulations amend or partially repeal Section 1886(d)(10)(C)(i) by not allowing the MGCRB to consider an application by a Section 401 hospital. The Secretary does not have the authority to pick and choose which aspects of a law she decides to implement.

Had Congress intended to grant the Secretary discretion to exclude Section 401 hospitals from being treated as located in a rural area in the MGCRB process or to treat Section 401 hospitals differently than other hospitals located in rural areas, Congress would have included language in Section 401 to that effect. In fact, there are parts of Section 401 in which Congress did grant the Secretary discretion. Section 401(a) provides in part: "For purposes of this subsection, not later than 60 days after the receipt of an application (*in a form and manner determined by the Secretary*) from a subsection (d) hospital…" (emphasis added). Thus, the Secretary has discretion to determine the form and manner of the Section 401 application. Elsewhere in Section 401(a), Congress established four criteria. If a hospital satisfies one of the criteria, the hospital shall be treated as located in the rural area of the State. The last criterion provides: "(IV) The hospital meets such other criteria *as the Secretary may specify.*" (emphasis added). Thus, the Secretary may, but is not required to, establish additional criteria by which a hospital could qualify for Section 401 status. The Secretary has chosen not to enact such additional criteria.

In stark contrast to the language Congress used in Section 401 when it wanted to grant the Secretary discretion, there is no such discretion granted when Congress directed that if a hospital satisfies any one of the Section 401 criteria, then "For purposes of this subsection" the Secretary "shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is

located." Had Congress intended there to be discretion, it would have used the language of discretion. Congress would have used words like "but," "except," "as determined by the Secretary," "unless the Secretary determines it is appropriate not to do so," or the like. More simply, Congress could have simply used the word "may" instead of "shall." If Section 401 read "the Secretary may treat the hospital as being located in the rural area," then the Secretary might have discretion to choose when and if to treat a Section 401 hospital as located in the rural area of the State. Congress did not include such language.

The only reading of Section 401 that gives full effect to each and every word and phrase is the reading for which Geisinger advocates. The statute requires a Section 401 hospital to be treated as being located in the rural part of the State for all purposes of Subsection (d). This includes the MGCRB applying to Section 401 hospitals the standards that govern wage index reclassification applications of hospitals located in the rural area of a State. Congress used broad and mandatory language, with no qualifications. No ifs. No buts. No maybes. No "except for the MGCRB process."

### B. The Secretary's regulatory scheme is illegal based on the context of Section 401.

The context of the statute also establishes that Section 401 applies to the MGCRB process. The Supreme Court has emphasized the importance of context in Step 1 of the *Chevron* analysis:

28

> In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132-33, 120 S. Ct. 1291, 1300-01, 146 L. Ed. 2d 121 (2000) (internal citations and quotation marks omitted).

Section 401(a) requires that a Section 401 hospital be treated as located in the rural area of a State for all purposes in Subsection (d), which encompasses the MGCRB reclassification process. The Secretary appears to accept that Section 401 applies to all aspects and provisions of subsection (d), <u>except</u> the MGCRB process. There is no basis in the statutory language to conclude that Congress meant the phrase "[f]or purposes of this subsection" to include every aspect of subsection (d) but one (the MGCRB process). The only textual argument the Secretary advanced before the District Court is that Section 401 does not specifically say "MGCRB." Of course, Section 401 does not reference any specific paragraph or subparagraph of subsection (d) <u>because it applies to the entire subsection</u>. Congress did not mention the words "Medicare Geographic Classification Review Board" because it did not need to. The statute contains a much broader command as to the areas to which

29

Section 401 applies. Simply because Congress has issued a broad command to the Secretary does not mean that command is ambiguous. *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 310 (3d Cir. 2010) ("As a general rule of statutory construction, a term in a statute is not ambiguous merely because it is broad in scope."). If the Secretary's position is correct, there is nothing to prevent the Secretary from deciding that she has the discretion to refuse to apply Section 401 to any or all parts of subsection (d). Such an interpretation eviscerates the statutory requirement that the Secretary "shall" treat a Section 401 hospital as located in the rural area of the State "[f]or purposes of this subsection."

When Section 401 amended the Medicare Act, Congress had an existing statutory scheme and definitions into which Section 401 would be incorporated. When Congress used the language "For purposes of this subsection," the words already had meaning on which Congress could rely. The only plausible reading of the phrase "For purposes of this subsection" is that it means the entire subsection, including the MGCRB process. When Congress has a word or phrase that encompasses all areas to which Congress wants an amendment to apply, it is appropriate for Congress to use the word or phrase. For example, when Congress in Section 401 uses the phrase "rural area (as defined in paragraph (2)(D))," it is unnecessary for Congress to repeat the entire text of paragraph (2)(D). Similarly, when Congress uses the phrase "For purposes of this subsection," it is unnecessary

for Congress to repeat the entire text of Subsection (d) and impractical to expect Congress to do so. If language like "For purposes of this subsection" were held to be ambiguous or vague, the only solution for Congress is to repeat entire sections of previously enacted legislation. To do so would be superfluous and would add thousands of pages of to the Medicare Act.

One can easily imagine a statute that changes the Medicare Act, but is rudderless as to what specific sections of the Act the changes apply. For example, in Section 401, if Congress said "for reimbursement purposes" or something similar, without providing context, there might be ambiguity. Under such circumstances, the Secretary might be within her authority to attempt to dissect which aspect of reimbursement Congress meant. That is not the statute or situation before this court.

Section 401 is a model of clarity wherein Congress targeted three specific areas of the Medicare Act. Congress wanted Section 401 hospitals to be treated as located in the rural area for purposes of inpatient reimbursement under Subsection (d), including the MGCRB process and all other aspects of Subsection (d), so Section 401(a) created a new subparagraph within Subsection (d) of the Medicare Act. By using the language "For purposes of this subsection," Congress made clear that it intended the change to apply to the entirety of Subsection (d). Congress wanted Section 401 hospitals treated as being located in the rural area for purposes of outpatient reimbursement, so Section 401(b)(1) modified the section of the Act

addressing outpatient payments. Finally, Congress wanted Section 401 hospitals to be eligible for Critical Access Hospital status, if the hospitals satisfied all other criteria, so Section 401(b)(2) added a specific phrase to the section of the Act governing Critical Access Hospitals.

Reading Section 401 in context gives further support to Geisinger's position that Congress has clearly spoken on the issues before this Court and the Secretary's regulatory scheme conflicts with Congress's unambiguous intent. In Section 401, itself, Congress told the Secretary and the courts exactly how to apply Section 401. The Secretary has ignored that mandate. The court must not.

### C. The legislative history of Section 401 shows that the Secretary's regulatory scheme is illegal.

Although a panel of the Third Circuit recently stated that "the current state of Supreme Court and Third Circuit jurisprudence demonstrates that legislative history should not be considered at Chevron step one," *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008), the recent Supreme Court decision in *Lawson v. FMR LLC*, ___ U.S. ___, 134 S. Ct. 1158, 188 L. Ed. 2d 158 (2014) shows that legislative history can be considered by courts to ascertain Congressional intent. Four Justices in the majority considered legislative history, even though the majority did not find the statutory language ambiguous. *See Lawson*, 134 S. Ct. at 1169-75 (citing variously to a Senate Report, statements of sponsors, the "legislative record," "legislative history," and congressional staff investigations).

Geisinger believes the better approach is to consider legislative history at Step 1 of *Chevron* when it is helpful in determining whether Congress has directly spoken to the specific issue in dispute. Even if this Court determines that legislative history is more appropriately considered at *Chevron* Step 2, the Secretary's regulations are directly contrary to the legislative history of Section 401 and illegal.

The intent of Congress in enacting Section 401 is clear from the Conference Report accompanying Section 401. Congress explained that the benefits of an urban hospital qualifying under Section 401 would be very broad:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. **Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area**. **The Board shall regard such hospitals as rural** and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added).

Congress expressly stated its intention that a Section 401 hospital shall be regarded as being located in the rural area of a State for purposes of reviewing the hospital's MGCRB application. The Conference Report states that the MGCRB "shall regard such hospitals as rural <u>and</u> as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated" (emphasis added). Under the Secretary's regulations the MGCRB will <u>never</u> treat a Section 401 hospital as located in the rural area of the State. Under the Secretary's

regulations, a Section 401 hospital cannot be approved by the MGCRB to reclassify

to a different CBSA for wage index purposes while the hospital has Section 401

status. Moreover, even if a hospital cancels its Section 401 status, the MGCRB still

will not apply the standards for hospitals located in rural areas of the State:

> For purposes of subpart L of Part 412 of the regulations, the hospital
> will be considered urban because it is physically located in an urban
> area and will longer (sic) be in rural status upon the effective date of
> the MGCRB decision. Thus, the hospital will be subject to
> reclassification rules that apply to urban hospitals for individual
> hospital reclassification applications under § 412.230 and countywide
> group reclassification applications under § 412.234.

*Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. &*

*Fiscal Year 2006 Rates*, 70 FR 47,278, 47444 (Aug. 12, 2005).

There are Section 401 hospitals that, like Geisinger, meet all reclassification

requirements applicable to hospitals located in rural areas. In fact, both Moses Taylor

Hospital and Regional Hospital of Scranton are located in the same CBSA as

Geisinger. Several years ago, the hospitals sought to reclassify to the Allentown

CBSA. Defendants-Appellees refused to consider the hospitals as located in the rural

area of the state and denied the hospitals' MGCRB applications, stating that "for

purposes of the reclassification rules, and except to the extent any Special Access

and wage rules apply as an RRC, the Hospital will be considered urban under an

individual application, as that is where the Hospital is physically located." *In the

Case of Moses Taylor Hosp.*, Decision of the Admin. (Apr. 27, 2013) 2013 WL

2470295, *5 (A097-103, <u>Glazer Declaration</u>, Exhibit 1); *In the Case of Regional*

*Hosp. of Scranton*, Decision of the Admin. (Apr. 27, 2013) 2013 WL 2470296, *5

(A104-109, <u>Glazer Declaration</u>, Exhibit 2).

The Secretary's reading of Section 401 ignores the use of the word "and" in

the Conference Report. The Conference Report explains that the MGCRB shall

consider a Section 401 hospital as rural **and** entitled to any applicable exceptions for

RRCs or Sole Community Hospitals. Congress intended a Section 401 hospital to be

considered located in the rural area of a State for purposes of the hospital's

application to the MGCRB. Congress also intended for a Section 401 hospital to be

given any exceptions that apply to RRCs in the MGCRB process. As further clarified

by the Conference Report, Congress intended both, not one or the other.

### III.    The Secretary's Regulatory Scheme is Illegal under Step 2 of *Chevron*.

Even if one were to proceed to Step 2 of *Chevron*, the Secretary's regulations

would be invalid because they are arbitrary, capricious, or manifestly contrary to

Section 401 and the Medicare Act.

Agency discretion is not unbounded. In *Chevron*, the Supreme Court noted

that "a reasonable accommodation of conflicting policies that were committed to the

agency's care by the statute" should not be disturbed "<u>unless it appears from the

statute or its legislative history that the accommodation is not one that Congress

would have sanctioned</u>." *Chevron*, 467 U.S. at 845 (emphasis added); *accord Envtl.*

*Def. v. Duke Energy Corp.*, 549 U.S. 561, 575, 127 S. Ct. 1423, 1433, 167 L. Ed. 2d 295 (2007) ("Nothing in the text or the legislative history of the technical amendments that added the cross-reference to NSPS suggests that Congress had details of regulatory implementation in mind when it imposed PSD requirements on modified sources"). The Third Circuit has consistently affirmed the importance of legislative history in the *Chevron* analysis: "[u]nder step two of the *Chevron* framework, we consider whether the [agency's] interpretation is reasonable in light of the language, policies, and legislative history" of the statutory provision at issue. *GenOn REMA, LLC v. EPA*, 722 F.3d 513, 522 (3d Cir. 2013) (citation omitted); *United States v. McGee*, 763 F.3d 304, 315 (3d Cir. 2014).

Legislative intent, whether considered at Step 1 or Step 2 of the *Chevron* analysis, can be critical to determining whether an agency's interpretation of a statute is valid.

As demonstrated above, the intent of Congress is set forth in the Conference Report – a Section 401 hospital shall have the right to apply to the MGCRB and be treated as a hospital located in the rural area of the State would be treated. Such a hospital is also entitled to receive any exceptions extended to RRCs, if applicable. This legislative intent shows the Secretary's regulations to be arbitrary, capricious, and manifestly contrary to Section 401.

The Conference Report shows Congress wanted the MGCRB to regard Section 401 hospitals "as rural." The Secretary does not dispute the language in the Conference Report accompanying Section 401, she simply ignores it.

The Secretary's regulatory scheme attempts to treat hospitals located in the rural area of a State differently, depending on how they came to acquire that status. There is no basis in law for doing so. Under the Medicare Act, there is one definition of "rural" and that is codified at 42 U.S.C. § 1395ww(d)(2)(D). Section 401 hospitals are considered located in the rural area of the State under that singular definition for the three specific purposes set forth in Section 401. The Secretary has created a new category of hospitals that are "kind of located in the rural area of the State", or located in the rural area of the State when the Secretary wants them to be, but not when the Secretary does not want them to be. This creation of a new category of hospitals exceeds the Secretary's authority under Section 401 and the Medicare Act.

By interpreting Section 401 so that a Section 401 hospital is never treated by the MGCRB as being located in the rural area of the State, and ignoring Congress's clear direction that the "Board shall regard such hospitals as rural," the Secretary ceases to implement law and seeks to create her own. In doing so she has acted arbitrary, capriciously, and contrary to statutory requirements.

## CONCLUSION

For the foregoing reasons, Geisinger requests that this Court reverse the District Court's grant of summary judgment in favor of the defendants-appellees, and grant judgment in favor of Geisinger:

1. Declaring that the Department of Health and Human Services' regulations regarding the treatment of Section 401 hospitals in the Medicare Geographic Classification Review Board process violate the Social Security Act and the Administrative Procedure Act.

2. Issuing a permanent injunction, an order of mandamus, or both:

    a. prohibiting defendants-appellees from applying to appellant Geisinger Community Medical Center the regulatory scheme adopted by the Department of Health and Human Services, and

    b. ordering defendants-appellees to apply the standards applicable to rural hospitals and Rural Referral Centers when reviewing and deciding Geisinger Community Medical Center's geographic reclassification applications to the Medicare Geographic Classification Review Board.

Respectfully submitted,

/s/ Joseph D. Glazer
Joseph D. Glazer
The Law Office of Joseph D. Glazer, P.C.
116 Village Boulevard, Suite 200
Princeton, New Jersey 08540
Telephone:  (609) 951-2262
Facsimile:  (609) 951-2263
jdg@jdglazerlaw.com

/s/ Mary Kay Brown
Mary Kay Brown
Brown Wynn McGarry Nimeroff LLC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone:  (267) 861-5331
Facsimile:  (267) 350-9050
mkbrown@bwmnlaw.com

*Counsel for Appellant*
*Geisinger Community Medical Center*

Dated:  February 2, 2015

## CERTIFICATE OF BAR MEMBERSHIP

Each of the undersigned certifies that he or she is admitted to and a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated:  February 2, 2015          /s/ Joseph D. Glazer
                                       Joseph D. Glazer


                                       /s/ Mary Kay Brown
                                       Mary Kay Brown

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies the following:

1.      This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Brief contains **9255** words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in proportionally spaced typeface using MS Word, 14 point Times New Roman font.

2.      The text of the electronic Brief and the text of the paper copies are identical.

3.      A virus detection program, ThreatTrack VIPRE Business Premium, has been run on the file and no virus was detected.

Dated:  February 2, 2015                    /s/ May Kay Brown
                                            Mary Kay Brown

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing Brief for Appellant was electronically filed with the Clerk of the Court using the CM/ECF system. I also hereby certify that I caused ten (10) paper copies to be delivered to the Clerk's Office. Service was accomplished on the following by the CM/ECF system:

Tara S. Morrissey
Civil Division, Appellate Staff
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 353-9018
Facsimile:  (202) 514-8151
tara.s.morrissey@usdoj.gov

D. Brian Simpson
Assistant United States Attorney
228 Walnut Street
Harrisburg, PA 17108
Telephone:  (717) 221-4482
Facsimile: (717) 221-2246
D.Brian.Simpson@usdoj.gov

Dated:  February 2, 2015                    /s/ Mary Kay Brown
                                            Mary Kay Brown