NO. 15-1202

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

GEISINGER COMMUNITY MEDICAL CENTER ,

PLAINTIFF-APPELLANT,

v.

SYLVIA MATHEWS BURWELL, Secretary, Department of Health and Human
Services; MARILYN TAVENNER, Administrator, Centers for Medicare and
Medicaid Services; and ROBERT G. EATON, Chairman, Medicare Geographic
Classification Review Board

DEFENDANTS-APPELLEES.

On Appeal From The United States District Court
For The Middle District of Pennsylvania
Civil Action No. 3:14-1763
(Hon. Malachy E. Mannion, District Judge)

**JOINT APPENDIX**

**Volume I of II**
**(Pages A001 through A033)**

Joseph D. Glazer
The Law Office of Joseph D. Glazer, P.C.
116 Village Boulevard, Suite 200
Princeton, New Jersey 08540
Telephone:  (609) 951-2262
Facsimile:  (609) 951-2263
jdg@jdglazerlaw.com

Mary Kay Brown
Brown Wynn McGarry Nimeroff LLC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone:  (267) 861-5331
Facsimile:  (267) 350-9050
mkbrown@bwmnlaw.com

*Attorneys for Appellant*
*Geisinger Community Medical Center*

## **Table of Contents**
## **(Volume I of II)**

1.    Notice of Appeal dated January 20, 2015……………...………..……A001

2.    Memorandum dated December 22, 2014...………………………..…..A003

3.    Order dated December 22, 2014……………..……………………….A031

4.    Summary Judgment in a Civil Case dated December 22, 2014………...A033

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Geisinger Community Medical Center,<br><br>           Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL, Secretary,<br>Department of Health and Human Services;<br>MARILYN TAVENNER, Administrator,<br>Centers for Medicare and Medicaid Services;<br>and ROBERT G. EATON, Chairman, Medicare<br>Geographic Classification Review Board,<br><br>           Defendants. | Civil Action No. 3:14-cv-01763-MEM |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Geisinger Community Medical Center hereby appeals to the United States Court of Appeals for the Third Circuit from the final judgment of this Court entered in this action on December 22, 2014.

Dated: January 20, 2015

s/ Joseph D. Glazer
Joseph D. Glazer (NJ No. 042261993)
THE LAW OFFICE OF JOSEPH D. GLAZER, P.C.
116 Village Boulevard, Suite 200
Princeton, New Jersey 08540
Telephone: (609) 951-2262
Facsimile: (609) 951-2263
jdg@jdglazerlaw.com

s/ Mary Kay Brown
Mary Kay Brown (PA ID No. 54327)
Brown Wynn McGarry Nimeroff LLC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (267) 861-5331
Facsimile: (267) 350-9050
mkbrown@bwmnlaw.com

*Counsel for Plaintiff*
*Geisinger Community Medical Center*

Case 3:14-cv-01763-MEM   Document 30   Filed 01/20/15   Page 2 of 2

## CERTIFICATE OF SERVICE

I certify that on this date I caused a copy of the foregoing Notice of Appeal to be filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


Date:  January 20, 2015                          s/ Joseph D. Glazer

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GEISINGER COMMUNITY MEDICAL CENTER,** | : | |
| | : | **CIVIL ACTION NO. 3:14-1763** |
| **Plaintiff** | : | **JUDGE MANNION** |
| **v.** | : | |
| **SYLVIA MATHEWS BURWELL,** Secretary, Department of Health and Human Services; | : | |
| **MARILYN TAVENNER,** Administrator, Centers for Medicare and Medicaid Services; and **ROBERT G. EATON,** Chairman, Medicare Geographic Classification Review Board, | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**M E M O R A N D U M**

Pending before the court are the defendants' motion for summary judgment, (Doc. 15), and the plaintiff's cross-motion for summary judgment, (Doc. 17). Upon consideration of the motions and related materials, the defendants' motion for summary judgment will be granted and the plaintiff's cross-motion for summary judgment will be denied.


**I.    PROCEDURAL HISTORY**

By way of relevant procedural background, the plaintiff commenced the instant action on September 10, 2014. (Doc. 1). In the action, the plaintiff

challenges a regulation promulgated under the Medicare program by the Secretary of the Department of Health and Human Services, ("Secretary"), 42 C.F.R. §412.230(a)(5)(iii), which the plaintiff claims would unlawfully prevent the Medicare Geographic Classification Review Board, ("Board"), from considering its application to be reclassified to the Allentown-Bethlehem-Easton, PA-NJ urban area for purposes of payment under Medicare's inpatient hospital prospective payment system, ("IPPS"). The regulation at issue precludes a hospital that has been redesignated as rural under 42 U.S.C. §1395ww(d)(8)(E), which was enacted by Section 401 of the Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999, ("Section 401"), Pub. L. No. 106-113, H.R. 3194, 106th Cong. §401 (1st Sess. 1999), from "receiv[ing] an additional reclassification by the Board based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. §412.230(a)(5)(iii). The plaintiff alleges by way of the instant action that it is entitled to participate in the Board reclassification process, which is governed by 42 U.S.C. §1395ww(d)(10), on the same basis as a geographically rural hospital and, as such, the Secretary's regulation which disallows such reclassification is invalid. Count One of the complaint alleges a violation by the defendants of Section 401. Count Two alleges a violation by the defendants of the Administrative Procedure Act, 5 U.S.C. §701, et

2

seq.

In accordance with the court's scheduling order, (Doc. 12), on October 24, 2014, the defendants filed a motion for summary judgment, (Doc. 15), along with a supporting brief, (Doc. 16). On the same day, the plaintiff filed a cross-motion for summary judgment, (Doc. 17), along with a supporting brief, (Doc. 19).

On October 28, 2014, a statement of material facts was filed in support of the defendants' motion for summary judgment, (Doc. 20), followed by a statement of material facts in support of the plaintiff's cross-motion for summary judgment on October 29, 2014, (Doc. 21). On November 20, 2014, the defendant filed a statement of facts responsive to that of the plaintiff's, (Doc. 23). On the following day, the plaintiff filed a statement of facts responsive to that of the defendants'. (Doc. 25). In addition, the parties each filed their briefs opposing the others' motion for summary judgment. (Doc. 24, Doc. 26).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

3

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

4

could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment. Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). When confronted with cross-motions for summary judgment, as in this case, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary

5

judgment standard.[1]" Marciniak v. Prudential Financial Ins. Co. of America, 2006 WL 1697010, at *3 (3d Cir. June 21, 2006) (citations omitted) (not precedential). If review of cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted). See Nationwide Mut. Ins. Co. v. Roth, 2006 WL 3069721, at *3 (M.D. Pa. Oct. 26, 2006) aff'd, 252 F. App'x 505 (3d Cir. 2007).

## III.   DISCUSSION

As indicated above, the parties have each filed a statement of material facts in support of their respective motions for summary judgment. Based upon a review of those statements, as well as the opposing parties' responses thereto, the following are the facts which are undisputed[2].

---

[1]The court notes that, although it must rule on each party's motion on an individual basis, in this case, the arguments raised by the plaintiff in support of its motion for summary judgment substantially mirror those by the plaintiff in opposition to the defendants' motion for summary judgment. As such, the arguments raised by the parties are addressed collectively and disposition in favor of one party necessarily implies disposition against the other.

[2]As the parties' statements of material fact substantially overlap, the court has combined them for purposes of considering the cross-motions for summary judgment.

The plaintiff, Geisinger Community Medical Center, ("Geisinger"), is a not-for-profit, general, acute care hospital located at 1800 Mulberry Street, Scranton, Pennsylvania. Scranton is classified as an urban area. Geisinger is a provider of services as defined in the Medicare Act, 42 U.S.C. §1395x(u), and has entered into an agreement with the Secretary to provide services to Medicare beneficiaries pursuant to 42 U.S.C. §1395cc. Geisinger is a subsection (d) hospital under the Medicare Act and receives reimbursement for services rendered to Medicare beneficiaries.

With respect to the Medicare Program, unless exempt, hospitals in Medicare, such as Geisinger, are paid under Medicare's IPPS as provided for in 42 U.S.C. §1395ww(d). Calculating IPPS rates begins with a standard nationwide rate based on average operating costs of inpatient hospital services. The Centers for Medicare and Medicaid Services, ("CMS"), determines the proportion of the standardized amount attributable to wages and wage-related costs, and multiplies that proportion by a "wage index" that reflects the relation between the local average of hospital wages and the national average. Another variable reflects the disparate hospital resources required to treat illnesses. Medicare inpatients are classified into groups based on diagnosis. Each "diagnosis-related group," is assigned a "weight" representing the relationship between the cost of treating patients within that

7

group and the average cost of treating all Medicare patients.

Medicare generally pays providers for outpatient services in accordance with Medicare's Outpatient Prospective Payment System, ("OPPS"), as set forth in 43 U.S.C. §1395l(t). Payments for each outpatient Ambulatory Payment Classification, are based, in part, on CMS's estimates of the costs associated with providing services assigned to an APC. Typically, payments for procedures are adjusted for geographic wage variations.

With respect to the Medicare Wage Index Adjustment, in 42 U.S.C. §1395ww(d)(3)(E), Congress required an adjustment to the federal reimbursement rate to account for differences in labor costs based on geographic location and the market in which the hospitals compete for labor:

> [t]he Secretary shall adjust the proportion . . . of the hospitals' costs which are attributable to wages and wage-related costs . . . for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

The wage index adjustment is recomputed annually to reflect changes in local labor costs compared to the national average. Hospitals in areas with labor costs above the national average receive a higher reimbursement rate, while hospitals in areas with lower labor costs receive a lower rate.

In 1983, the Secretary established hospital labor markets by grouping

8

hospitals according to Metropolitan Statistical Areas, ("MSAs"). Hospitals in the county or counties that make up an MSA are grouped together and treated as a single labor market for wage index purposes. Following the 2000 census, CMS adopted Core Based Statistical Areas, ("CBSAs"), to replace MSAs. The Secretary determines a separate wage index for each CBSA, and one wage index per state for rural areas. Whether a hospital is considered located in an urban area or rural area can significantly impact a hospital's Medicare reimbursement. A hospital's wage index is the wage index the Secretary assigns to the area where the hospital is physically located. According to a June 2007 report issued by the Medicare Political Advisory Committee, ("MedPAC"), the calculated wage index for more than one-third of IPPS hospitals had increased as a result of various exceptions to the basic wage index system.

With respect to the Board's Geographic Reclassification Process, in 1989, Congress established the Board to provide a mechanism for a hospital to request to be reclassified from the geographic area in which it is physically located to another proximate area for purposes of Medicare reimbursement. The Board is an administrative body within the United States Department of Health and Human Services and renders decisions on applications by hospitals to be reclassified to different geographic areas for purposes of

computing portions of their Medicare payments for inpatient services for a particular fiscal year.

Generally, a hospital applying to the Board for geographic reclassification as an individual hospital must prove three things. First, the hospital's three-year average hourly wage, ("AHW"), must be at least 108% of the AHW of the area in which the hospital is located if the hospital is located in an urban area or 106% if the hospital is located in a rural area. Second, the hospital's three-year AHW must be at least 84% of the AHW of the area to which the hospital is applying if the hospital is located in an urban area or 82% if the hospital is located in a rural area. Third, the hospital must be within 35 miles of the area to which it is applying if the hospital is located in a rural area, or within 15 miles if the hospital is located in an urban area. Reclassifications by the Board are valid for three years, after which a hospital must reapply to the Board if the hospital wishes to be reclassified to a different CBSA for a subsequent time period.

Medicare recognizes hospitals with "special" status, including rural referral centers, ("RRCs"). A RRC need not demonstrate close proximity to the area to which it seeks reclassification. Any hospital that was ever an RRC is exempt from the 108% requirement of 42 C.F.R. §412.230(d)(1)(iii) and need only meet the 82% requirement of 42 C.F.R. §412.230(d)(1)(iv).

10

In 1999, Congress enacted Section 401. Section 401 amended Section 1886(d)(8) of the Medicare Act and created a mechanism by which some hospitals located in urban areas could be treated as being located in a rural area for purposes of Medicare reimbursement. Under Section 401, a hospital located in an urban area may qualify to be treated as if it were located in a rural area for purposes of Medicare reimbursement if it meets one of several specified criteria. One such criterion provides that a hospital qualifies for reclassification under Section 401 if it "would qualify as a rural, regional, or national referral center under . . . [1886(d)(5)(C)] . . . if the hospital were located in a rural area." A hospital qualifies as a RRC if it meets all of the following criteria: (1) the hospital's case-mix index is at least equal to the national or regional average, (2) the hospital has at least 5,000 discharges, and (3) at least 50% of the hospital's medical staff is board certified.

The conference report accompanying Section 401 provides, in part, as follows:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area. The Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV §401 (1999).

Subsequent to the enactment of Section 401, the Secretary adopted regulations providing that "[a]n urban hospital that has been granted redesignation as rural under §412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the Board based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. §412.230(a)(5)(iii).

With the above in mind, Geisinger, by application dated May 28, 2014, and received by the CMS on June 11, 2014, applied to be designated a Section 401 hospital and thus to be treated as being located in the rural areas of Pennsylvania for the purposes set forth in Section 401. By letter dated August 12, 2014, CMS notified Geisinger that its application to be designated a Section 401 hospital had been approved effective June 11, 2014.

By letter dated June 11, 2014, and received by CMS and the Medicare Administrative Contractor on June 13, 2014, Geisinger requested to be designated a RRC, which as indicated above is a designation attributed to rural hospitals with specified characteristics that permits such hospitals to enjoy certain benefits under Medicare's payment system. On August 12, 2014, CMS granted Geisinger's request to be designated a RRC pursuant

12

to Section 401, effective June 11, 2014. Shortly thereafter, by letter dated August 20, 2014, Novitas Solutions, the Medicare Administrative Contractor, notified Geisinger that its request for RRC status had been approved effective July 1, 2014.

On August 26, 2014, fourteen days after CMS redesignated Geisinger as a rural hospital, Geisinger asked CMS to cancel its Section 401 status effective October 1, 2015[3].

On August 28, 2014, Geisinger submitted two applications to the Board. The primary application was to be reclassified for wage-index purposes to the Allentown-Bethlehem-Easton, PA-NJ urban area effective October 1, 2016[4]. On this application, Geisinger identified itself as a rural hospital. The secondary application was to be reclassified to the East Stroudsburg, PA, urban area, also effective October 1, 2016. On this application, Geisinger identified itself as an urban hospital. Geisinger would likely receive additional reimbursement if it were to be reclassified into either its primary or secondary preference for reclassification.

_____

[3]Pursuant to 42 C.F.R. §412.104(g)(ii), hospitals which reclassify as rural are required to retain that reclassification for at least one year.

[4]Although plaintiff indicates this reclassification was to be effective October 1, 2015, the application itself reflects that it was to be effective the federal fiscal years 2016 through 2018. Federal fiscal years run from October 1st.

13

As for Geisinger's primary application, the Secretary's regulations preclude a hospital, such as Geisinger, that has been redesignated as a rural hospital under Section 401 from utilizing the Board reclassification process. If Geisinger were a RRC actually located in a rural area, rather than an urban hospital that is redesignated as a rural under Section 401, it would be able to utilize the Board's reclassification process.

The distance between Geisinger and the Allentown CBSA, its first preference for reclassification, is approximately 27 miles. The distance between Geisinger and the East Stroudsburg CBSA, its second preference for reclassification, is approximately 15.8 miles. Thus, Geisinger satisfies the proximity requirement set forth at 42 C.F.R. §412.230(b)(1) for hospitals located in the rural area of a state. Geisinger's three-year AHW is 86.38% of the Allentown CBSA AHU, and 86.45% of the East Stroudsburg CBSA. Thus, the hospital satisfies the element at 42 C.F.R. §412.230(d)(1)(iv)(E). Geisinger's three-year AHW is 96.51% of the AHW of the Scranton-Wilkes-Barre-Hazelton, PA CBSA, where the hospital is physically located, and 101.28% of the AHW of the Pennsylvania rural area, where the hospital is required to be treated as being located pursuant to Section 401. As an RRC, however, the hospital is exempt from this requirement.

To the extent Geisinger is dissatisfied with any decision of the Board

14

on its applications[5], it can seek review of the Board's decision from the Administrator of CMS. Any decision by the Administrator is final and not subject to further administrative or judicial review.

By way of this action, Geisinger challenges the Secretary's regulation, 42 C.F.R. §412.230(a)(5)(iii), which Geisinger claims would unlawfully prevent the Board from considering its application to be reclassified to the Allentown urban area for purposes of payment under the IPPS. In their motion for summary judgment, the defendants initially argue that this court lacks subject matter jurisdiction to consider the plaintiff's claims. To this extent, the defendants argue that Geisinger has not received a final decision of the Secretary on its reclassification requests and, even if it had received such a decision, that decision would be unreviewable under the plain terms of the Medicare statute. (Doc. 16, pp. 12-17).

Absent clear and convincing evidence of congressional intent to preclude judicial review, the court must give effect to the well-settled presumption of judicial review of an administrative action. See Kucana v. Holder, 558 U.S. 233, 252 (2010). In determining whether a statute precludes judicial review, the court considers the express language of the statute, as

---

[5]In this case, the parties have stipulated and agreed that the Board will not issue any decision regarding Geisinger's pending Board applications before January 1, 2015.

15

well as the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved. Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984).

Here, Geisinger concedes that the plain language of the Medicare Act precludes judicial review of a final Board decision. Geisinger argues, however, that it is not seeking to challenge any decision by the Board, but the method by which the Board's decision is made. For this, judicial review is not precluded. See Bowen v. Michigan Acad. of Family Physicians, 476 U.S. 667, 677-78 (1986) (holding that although the Medical Act precluded judicial review of individual benefit determinations, challenges to the Secretary's instructions and regulations governing those determinations were subject to judicial review). See also ParkView Med. Assocs. v. Shalala, 158 F.3d 146, 148 (D.C.Cir. 1998) (finding that although judicial review of the denial of the plaintiff's application was barred, the plaintiff was free to challenge the general rules leading to the denial); Universal Health Servs. v. Sullivan, 770 F.Supp. 704 (D.C. Cir. 1991) (finding that the Medicare Act does not preclude judicial review of the guidelines used by the Board and the Secretary in deciding upon reclassification requests and holding that the Act's preclusion of judicial review of the Board's reclassification determinations did not imply a congressional intent to preclude review of the

16

underlying guidelines)[6].

Despite the defendants' argument to the contrary, in this case, the court finds that Geisinger is challenging the regulation governing consideration of Board applications, rather than the denial of its application for classification. In fact, the parties have stipulated and agreed that the Board will not render any decision on Geisinger's applications before January 1, 2015. As such, there is no Board determination to challenge. Geisinger is seeking to challenge the general regulation which renders ineligible for reclassification any hospital which has already been reclassified under Section 401. This challenge seeks to bar the application of the regulation in general, not just to Geisinger specifically. Geisinger seeks to invalidate the Secretary's regulatory scheme, which it argues is in direct conflict with Section 401; it is not seeking to reverse any decision by the Board or to challenge the general rules used by the Board in rendering decisions. As such, the court finds that it has subject matter jurisdiction over the plaintiff's claims and the defendants' motion for summary judgment arguing to the contrary will be denied on this basis.

Next, the defendants argue that, substantively, the Secretary's

---

[6]See Lawrence v. Memorial Hosp. v. Sebelius, 986 F.Supp.2d 124, 131-32 (D.Ct. 2013), for further discussion of the case law cited herein finding that judicial review is not precluded for challenges to regulations governing agency determinations.

interpretation of the Medicare statute must be upheld.  (Doc. 16, pp. 17-29). The parties agree that the plaintiff's challenge to the Secretary's regulation should be evaluated under the deferential analysis set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Pursuant to the Chevron analysis, at the first step, when analyzing an agency's interpretation of a statute, the court must determine whether Congress has directly spoken to the precise question at issue. Id. at 842. If Congress has, the court and the agency must give effect to Congress' intent. Id. at 842-43.

If, however, the statute is silent or ambiguous as to the issue, Chevron dictates that the court determine whether the agency's interpretation is based on a permissible construction of the statute. Id. at 843. At the second step of Chevron, the court is to give considerable weight to an agency's interpretation unless it is arbitrary and capricious. Id. at 844.  Deference is given to the agency's interpretation of the statute so long as the construction is "a reasonable policy choice for the agency to make." Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs., 545 U.S. 967, 986 (2005) (citing Chevron, 467 U.S. at 845). This is so "even if the agency's reading differs from what the court believes is the best statutory interpretation." Id. at 980 (citing Chevron, 467 U.S. at 843-44 & n.11).

18

In this case, at the first step of the <u>Chevron</u> analysis, the issue is whether Congress, in Section 401, has directly spoken to whether a hospital that has been redesignated as rural under Section 401 is precluded from "receiv[ing] an additional reclassification by the Board based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. §412.230(a)(5)(iii). If Congress has and its intent is clear, the court must give effect to the expressed intent of Congress. In so determining, the court must look to the statutory language to determine if such language contains the unambiguous intent of Congress.

Geisinger concedes in its brief in opposition to the defendants' motion for summary judgment that Section 401 does not explicitly require by its terms that Section 401 hospitals be treated the same as hospitals physically located in rural areas for all purposes, but argues that Section 401 requires the Secretary to permit urban hospitals with acquired rural status under that provision to participate in the Board process, which is governed by a different statutory provision, 42 U.S.C. §1395ww(d)(10), on the same basis as a geographically rural hospital. In so arguing, Geisinger relies, in part, upon the language of Section 401(a), which provides that "[f]or purposes of this subsection," which Geisinger argues includes all provisions of subsection (d), the Secretary shall treat a Section 401 hospital as located in the rural area

19

of the State. Geisinger argues that Section 401 directs the Secretary to apply Section 401 to inpatient reimbursement for subsection (d) hospitals such as Geisinger and that subsection (d) also includes the requirements for wage index adjustments and the process for hospitals to be reclassified by the Board. Thus, by its terms, Geisinger argues that a Section 401 hospital applying to the Board must be treated for purposes of that application as though the hospital were part of the rural area of the State in which the hospital is located. In other words, Geisinger argues that the geographic reclassification criteria that apply to hospitals located in rural areas must be applied to Section 401 hospitals.

Further, Geisinger argues that Section 401 is equally clear in terms of what "rural area" means, referring to the definition of "rural area" in "paragraph (2)(D)." That paragraph defines "rural area" as "any area outside an urban area." 42 U.S.C. §1395(d)(2)(D). Geisinger argues, therefore, that Section 401 amends the definition of "rural area" to include hospitals that qualify under Section 401.

Taking the "shall" mandatory language of Section 401 and the reference to the definition of "rural area" together, Geisinger argues that the Secretary is required to treat a Section 401 hospital as though it were a hospital geographically located in a rural area.

20

In response to Geisinger's argument, the Secretary provides that, while Geisinger's interpretation may be permissible under the language of Section 401, it is not compelled by the plain language of the statute.

In considering the parties' arguments, upon review, Section 401 provides that for purposes of PPS, if a hospital qualifies for redesignation, "the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located." 42 U.S.C. §1395ww(d)(8)(E). While the use of the word "shall" in this provision is certainly mandatory, see e.g., United States v. Monsanto, 491 U.S. 600, 607 (1989), this language does not expressly require that redesignated hospitals be treated the same as hospitals actually located in rural areas for purposes of the statutory provision that provides for Board reclassification. In fact, the statute does not discuss the Board reclassification process at all, nor does it discuss the intersection of redesignation and geographic reclassification under the Medicare Act. See 65 Fed.Reg. 26282, 26308 (noting that the statute does not "address the issue of interactions between changes in classification under section [1395ww(d)(8)(E)] and the MGCRB reclassification process under [1395ww(d)(10)]"). Furthermore, there is no discussion in Section 401 as to how the Board should evaluate a hospital's eligibility for geographic classification. Section 401 appears then to be silent

21

as to whether hospitals that have been redesignated as rural must be eligible for geographic reclassification by the Board.

While silent as to the reclassification issue, Congress expressly granted the Secretary broad discretion to develop guidelines for considering Board applications providing "[t]he Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph." See 42 U.S.C. §1395ww(d)(10)(d)(i).

The silence of Congress as to the geographic reclassification process in Section 401 coupled with the delegation of authority given to the Secretary elsewhere in the Medicare Act to develop the standards by which hospitals are evaluated before the Board, compels the court to find that Geisinger cannot demonstrate the Secretary's regulation, 42 C.F.R. §412.230, violates the plain meaning of Section 401.

Moreover, although there is no plain or express language in Section 401 addressing the intersection between that statute and the Board reclassification statute, in support of its position that Congress has, in fact, spoken to the precise issue raised here, Geisinger cites to the text of a conference report published in conjunction with the adoption of the legislation enacting Section 401, which reads, in part, as follows:

> A hospital in an urban area may apply to the Secretary to be
> treated as if the hospital were located in a rural area of the State

22

in which the hospital is located. Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic Reclassification Review Board for geographic reclassification to another area. The Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, 512 (1999).

An attempt to rely on this same language at the first step of the Chevron analysis was recently made and rejected by the court in Lawrence & Memorial Hospital v. Sebelius, 986 F.Supp.2d at 136. In declining to adopt the hospital's attempt to rely on the above language, the court in Lawrence noted that "adopting Plaintiff's analysis would require the Court to rely on the conference report to expand on the clear terms of Section 401 and create a conflict with the challenged regulation where none exists on the face of the statute. Other courts have rejected such attempts by plaintiffs to create statutory ambiguity via legislative history when confronted with an otherwise permissible agency interpretation." Id. at 136 (citing San Bernardino Mountains Cmty. Hosp. v. Sec'y, 63 F.3d 882, 887 (9th Cir. 1995) ("[B]ecause the Secretary's interpretations fall squarely within her statutorily granted discretion, legislative history such as the Senate committee report cannot defeat the regulation."); Clinton Mem. Hosp. v. Shalala, 10 F.3d 854, 858

(D.C.Cir. 1993) ("It is far from clear to us that anything in a Senate committee report . . . could condemn as impermissible an interpretation fitting squarely within statutory language."); Macon Cnty. Samaritan Mem. Hosp. v. Shalala, 7 F.3d 762, 767 (8th Cir. 1993) (suggesting that an attempt to create ambiguity via legislative history "puts the cart before the horse.")). The Third Circuit has also found that consideration of a statute's legislative history has no place in Chevron's step one analysis, and this court finds no reason to depart. See United States v. Geiser, 527 F.3d 288, 292-94 (3d Cir. 2008), cert. denied, Geiser v. U.S., 555 U.S. 1102 (2009).

The above findings require the court to proceed to step two of the Chevron analysis. Under the second step of Chevron, the defendants argue that the Secretary reasonably interpreted the statute and reasonably resolved the ambiguity in the statute regarding the interaction between Section 401 and the Board reclassification process by promulgating a rule that eliminates the potential for inconsistent reclassifications of the same hospital for the same period, as well as the potential for unintended consequences. For its part, Geisinger argues that, even if the analysis properly proceeds to step two of Chevron, the Secretary does not have carte blanche to interpret the statute as she pleases. In this respect, Geisinger argues that the Secretary offered inappropriate and invalid reasons to prevent Section 401 hospitals

24

from applying to the Board and being considered under the criteria applicable to hospitals located in rural areas of the State. Geisinger argues therefore that the Secretary's regulations are invalid as arbitrary and capricious.

In promulgating 42 C.F.R. §412.230, the Secretary commented, in part, that "some hospitals might inappropriately seek to be treated as being located in a rural area for some purposes," and that such cases could have unintended consequences permitting some hospitals to receive inappropriate reimbursements. See 65 Fed.Reg. 47054, 47088-89. The Secretary explained:

> This policy is consistent not only with the statutory language but also with the policy considerations underlying the MGCRB process. The MGCRB process permits a hospital to be reclassified from one geographic area to another if it is significantly disadvantaged by its geographic location and would be paid more appropriately if it were reclassified to another area. We believe that it would be illogical to permit a hospital that applied to be reclassified from urban to rural under section 1886(d)(8)(E) of the Act because it was disadvantaged as an urban hospital to then utilize a process that was established to enable hospitals significantly disadvantaged by their rural or small urban location to reclassify to another urban location. If an urban hospital applies under section 1886(d)(8)(E) of the Act in order to be treated as being located in a rural area, then it would be anomalous at best for the urban hospital to subsequently claim that it is significantly disadvantaged by the rural status for which it applied and should be reclassified to an urban area.

Id. at 47088.

Alternative approaches to the final regulation were considered but

25

rejected with the reasoning that, while the approaches "would limit to some degree the possible inappropriate incentives for hospitals to become rural under section [1395ww(d)(8)(E)], we are concerned that they would still allow these hospitals to receive inappropriate payments, albeit on a more limited basis." 65 Fed.Reg. at 47089.

Thus, the Secretary decided to resolve the ambiguity in the statutes by promulgating a regulation that does away with any potential for inconsistent reclassifications of the same hospital for the same period, as well as the potential for unintended consequences.

Geisinger argues that the Secretary's various justifications for her refusal to allow Section 401 hospitals to apply to the Board to reclassify to another urban area for wage index purposes leaves out a key fact: A hospital geographically located in a rural area of a State can apply to the Board to be reclassified to an urban CBSA. If approved, the hospital will be treated as part of that urban area for wage index purposes, but will be treated as located in the rural area of the State for other purposes. Geisinger argues therefore that the Secretary's justifications for not allowing Section 401 hospitals to reclassify to an urban area for purposes of the wage index and remain rural for all other purposes are invalid.

In considering Geisinger's argument on this point, there is a significant

26

difference between allowing a hospital which is geographically located in a rural area and is significantly disadvantaged by its geographic location to be reclassified to an urban area in order to be paid more appropriately and allowing a hospital which is geographically located in an urban area to reclassify to a rural area claiming that it was disadvantaged as an urban hospital and then allowing that same hospital to reclassify under another process which was established to allow hospitals which are significantly disadvantaged by their rural status to reclassify to another urban location. The latter hospital voluntarily obtained its rural status, whereas the former did not.

It cannot be said that the Secretary's regulation, which was promulgated to avoid permitting a hospital to be treated as rural for some purposes and as urban for others allowing the hospital to receive inappropriate reimbursements, was unreasonable, even if the plaintiff can point to other reasonable policy choices. Further, such regulation cannot be labeled to be arbitrary and capricious.

Therefore, the court finds at the second step of the Chevron analysis that the Secretary's regulation should be upheld. As a result, the defendants' motion for summary judgment will be granted and the plaintiff's motion for summary judgment denied.

27

## IV.    CONCLUSION

In light of the foregoing, an appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  December 22, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1763-01.wpd

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEISINGER COMMUNITY** **MEDICAL CENTER,** | : | |
| | : | **CIVIL ACTION NO. 3:14-1763** |
| **Plaintiff** | : | |
| | : | **JUDGE MANNION** |
| **v.** | : | |
| | : | |
| **SYLVIA MATHEWS BURWELL,** **Secretary, Department of Health** **and Human Services;** | : | |
| **MARILYN TAVENNER,** **Administrator, Centers for** **Medicare and Medicaid Services;** | : | |
| **and ROBERT G. EATON,** **Chairman, Medicare Geographic** **Classification Review Board,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## O R D E R

In light of the memorandum issued this same day, **IT IS HEREBY ORDERED THAT:**

    **(1)**    the defendants' motion for summary judgment, **(Doc. 15)**, is **GRANTED**;

    **(2)**    the plaintiff's motion for summary judgment, **(Doc. 17)**, is **DENIED**;

    **(3)**    the Clerk of Court is directed to **ENTER JUDGMENT IN FAVOR OF THE DEFENDANTS AND AGAINST THE PLAINTIFF**; and

**(4)**    the Clerk of Court is directed to **CLOSE THIS CASE**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  December 22, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1763-01-ORDER.wpd

2

AO 450 (Rev 5/85)  Judgment in a Civil Case

**FILED
SCRANTON**

## UNITED STATES DISTRICT COURT
### Middle District of Pennsylvania

DEC 2 2 2014

PER _____
'DEPUTY CLERK

Geisinger Community
Medical Center

                Plaintiff

### SUMMARY JUDGMENT IN A CIVIL CASE

      V.

Sylvia Mathews Burwell, Marilyn
Tavenner, and Robert G. Eaton
              Defendants

                      CASE NUMBER: 3:14CV1763
                      Judge Mannion

[] **Jury Verdict.** This action came before the Court for a trial by jury.

[X ] **Decision by Court.** This action came to trial or hearing before the court. The issues have been tried or heard and a decision was rendered on December 22, 2014.


    IT IS ORDERED AND ADJUDGED that SUMMARY JUDGMENT be and hereby is entered in favor of the defendants, and against the plaintiff.


**MARIA E. ELKINS**

12/22/14 **Date**

                  **Clerk**


                  **Deputy Clerk**