No. 15-1202

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

GEISINGER COMMUNITY MEDICAL CENTER,

Plaintiff-Appellant,

v.

SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES; MARILYN TAVENNER, Administrator, Centers for Medicare and
Medicaid Services; ROBERT G. EATON, Chairman, Medicare Geographic
Classification Review Board,

Defendants-Appellees.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

———————————

**BRIEF FOR THE APPELLEES**

———————————

BENJAMIN C. MIZER
  *Acting Assistant Attorney General*

PETER J. SMITH
  *United States Attorney*

MICHAEL S. RAAB
  *(202) 514-4053*

TARA S. MORRISSEY
  *(202) 353-9018*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7261*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION .................................................................................1

STATEMENT OF THE ISSUES.....................................................................................2

STATEMENT OF RELATED CASES ............................................................................2

STATEMENT OF THE CASE ........................................................................................3

      A.     Statutory and Regulatory Background ...........................................................3

            1.     Medicare's Prospective Payment System and
                   Wage Indices .......................................................................................3

            2.     Geographic Reclassification ................................................................4

            3.     The Board Reclassification Rule .........................................................8

      B.     Factual Background and Prior Proceedings.................................................10

SUMMARY OF ARGUMENT......................................................................................16

STANDARD OF REVIEW ...........................................................................................18

ARGUMENT .................................................................................................................19

THE BOARD RECLASSIFICATION RULE IS A REASONABLE
INTERPRETATION OF THE RELATIONSHIP BETWEEN
SECTION 401 AND THE BOARD RECLASSIFICATION PROCESS .................19

      A.     Section 401 Does Not Unambiguously Limit The Secretary's
            Authority To Establish Guidelines For Board Reclassification ...............19

      B.     The Board Reclassification Rule Is Based On A Reasonable
            Interpretation Of The Relevant Statutory Provisions................................28

CONCLUSION ..................................................................................................33

COMBINED CERTIFICATIONS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P.,*
   719 F.3d 270 (3d Cir. 2013) ...................................................................................26

*Athens Cmty. Hosp., Inc. v. Shalala,*
   21 F.3d 1176 (D.C. Cir. 1994) .................................................................4, 19, 24

*Board of Trs. of Trucking Emps. of N.J. Welfare Fund, Inc.-Pension Fund*
   *v. Kero Leasing Corp.,*
   377 F.3d 288 (3d Cir. 2004) ...................................................................................18

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984) ...........................................................................13, 18, 24, 28

*Clinton Mem'l Hosp. v. Shalala,*
   10 F.3d 854 (D.C. Cir. 1993) .................................................................................26

*County of Los Angeles v. Shalala,*
   192 F.3d 1005 (D.C. Cir. 1999) ...............................................................................3

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
   545 U.S. 546 (2005) ...............................................................................................26

*Holder v. Martinez Gutierrez,*
   132 S. Ct. 2011 (2012) .....................................................................................18, 28

*In re Moses Taylor Hosp.,*
   No. 14C0144, 2013 WL 2470295 (H.C.F.A. Jan. 30, 2013) .........................20

*In re Regional Hosp. of Scranton,*
   No. 14C0180, 2013 WL 2470296 (H.C.F.A. Jan. 30, 2013) .........................21

*Lawrence & Mem'l Hosp. v. Burwell,*
   No. 3:13cv1495, 2014 WL 7338859 (D. Conn. Dec. 22, 2014).......................27, 29, 31

*Lawrence & Mem'l Hosp. v. Sebelius,*
   986 F. Supp. 2d 124 (D. Conn. 2013) ...............................................................22, 27

*Lawson v. FMR LLC,*
    134 S. Ct. 1158 (2014) ........................................................................ 25, 26

*Petit v. U.S. Dep't of Educ.,*
    675 F.3d 769 (D.C. Cir. 2012) ..................................................................32

*Robert Wood Johnson Univ. Hosp. v. Thompson,*
    297 F.3d 273 (3d Cir. 2002) .........................................................3, 4, 24, 28

*San Bernardino Mountains Cmty. Hosp. Dist. v. Secretary of Health & Human Servs.,*
    63 F.3d 882 (9th Cir. 1995) ......................................................................26

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A),*
    768 F.3d 284 (3d Cir. 2014) ................................................................ 19, 23

*Thomas Jefferson Univ. v. Shalala,*
    512 U.S. 504 (1994) ........................................................................... 28, 29

*United States v. Geiser,*
    527 F.3d 288 (3d Cir. 2008) ....................................................................25

*United States v. McGee,*
    763 F.3d 304 (3d Cir. 2014) ....................................................................31

*Vineland Fireworks Co. v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
    544 F.3d 509 (3d Cir. 2008) ............................................................... 23, 24

## Statutes:

*Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999,*
    Pub. L. No. 106–113, app. F, 113 Stat. 1501A-321 .................................. 6, 8

Pub. L. No. 101–239, § 6003(h) (1989).................................................................5

5 U.S.C. § 701 *et seq.* ......................................................................................1

5 U.S.C. § 706(2)(A) ........................................................................................18

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1361 ........................................................................................................1

42 U.S.C. § 256b(a)(4)(O) ............................................................................... 8, 22

42 U.S.C. § 1395 *et seq.* ............................................................................................3

42 U.S.C. § 1395i-4(c)(2)(B)(i) ................................................................................8

42 U.S.C. § 1395l(t)(13)(A) .....................................................................................8

42 U.S.C. § 1395ww(d) ...........................................................................................23

42 U.S.C. § 1395ww(d)(2) .........................................................................................3

42 U.S.C. § 1395ww(d)(2)(A)-(C) ............................................................................3

42 U.S.C. § 1395ww(d)(3) ................................................................................. 7, 25

42 U.S.C. § 1395ww(d)(3)(E) ....................................................................................3

42 U.S.C. § 1395ww(d)(5)(B)(v) ............................................................................22

42 U.S.C. § 1395ww(d)(5)(C)(i) ....................................................................6, 7, 25

42 U.S.C. § 1395ww(d)(5)(D)(i) ...............................................................................7

42 U.S.C. § 1395ww(d)(5)(D)(iii)(III) .............................................................. 7, 25

42 U.S.C. § 1395ww(d)(5)(F)(xiv)(II) ......................................................................8

42 U.S.C. § 1395ww(d)(8)(B) ....................................................................................5

42 U.S.C. § 1395ww(d)(8)(E) ....................................................................................6

42 U.S.C. § 1395ww(d)(8)(E)(i) ............................................7, 8, 13, 16, 17, 22

42 U.S.C. § 1395ww(d)(8)(E)(ii) ...............................................................................6

42 U.S.C. § 1395ww(d)(10) ................................................................5

42 U.S.C. § 1395ww(d)(10)(C)(i) .................................................. 5, 16

42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) ........................................ 15, 16

42 U.S.C. § 1395ww(d)(10)(D)(i) ................................... 5, 14, 17, 19

42 U.S.C. § 1395ww(d)(10)(D)(iii) ...............................................11

42 U.S.C. § 1395ww(d)(10)(D)(v) ..................................................5

**Regulatory Materials:**

42 C.F.R. § 412.96(a)-(c) ...............................................................6

42 C.F.R. § 412.103(g)(2)(i)-(ii) ...................................................11

42 C.F.R. § 412.105(f)(1)(iv)(A) ...................................................22

42 C.F.R. § 412.230 ......................................................................25

42 C.F.R. § 412.230(a)(3) ..................................................6, 7, 8, 12

42 C.F.R. § 412.230(a)(3)(i)-(ii) ............................................ 10, 12

42 C.F.R. § 412.230(a)(5) ............................................................20

42 C.F.R. § 412.230(a)(5)(iii) ........................................ 2, 9, 15, 16, 20

42 C.F.R. § 412.230(b) ..................................................................6

42 C.F.R. § 412.230(b)(1) .............................................................10

42 C.F.R. § 412.230(d) ..................................................................6

42 C.F.R. § 412.230(d)(1)(iii)(C) ..................................................11

42 C.F.R. § 412.230(d)(3) ......................................................6, 7, 8

42 C.F.R. § 412.230(d)(3)(i) ..........................................................11

42 C.F.R. § 412.274(b)(2) ..............................................................5

42 C.F.R. § 412.278(b)(1) ............................................................15

55 Fed. Reg. 36,754 (Sept. 6, 1990) ...........................................5

65 Fed. Reg. 26,282 (May 5, 2000)..........................................30

65 Fed. Reg. 47,054 (Aug. 1, 2000)....................................*passim*

70 Fed. Reg. 47,278 (Aug. 12, 2005)............................ 9, 15, 20, 21

**Rules:**

Fed. R. App. P. 4(a)(1)(B) .............................................................1

**Congressional Materials:**

H.R. Rep. No. 106-479 (1999) (Conf. Rep.) ..............................26, 27

H.R. Rep. No. 106-436 (1999) (Comm. Rep.) .........................27, 28

No. 15-1202

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

GEISINGER COMMUNITY MEDICAL CENTER,

Plaintiff-Appellant,

v.

SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES; MARILYN TAVENNER, Administrator, Centers for Medicare and
Medicaid Services; ROBERT G. EATON, Chairman, Medicare Geographic
Classification Review Board,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIEF FOR THE APPELLEES

**STATEMENT OF JURISDICTION**

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1361,

and 5 U.S.C. § 701 *et seq.* A44 (Compl.).[1] The district court entered summary

judgment for the government on December 22, 2014. A33 (Judgment). Plaintiff filed

a timely notice of appeal on January 20, 2015. A1 (Notice of Appeal); Fed. R. App. P.

4(a)(1)(B). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] References formatted as "A__" are to the Joint Appendix.

## STATEMENT OF THE ISSUES

When determining a hospital's wage index for purposes of reimbursement, the Medicare program classifies hospitals as "urban" or "rural," depending on their geographic location.  Hospitals that are disadvantaged by their geographic location may seek reclassification to a different area through two distinct mechanisms: "Section 401" redesignation or reclassification by the Medicare Geographic Classification Review Board ("Board").  To address the relationship between these two mechanisms, the Secretary of Health and Human Services promulgated the Board Reclassification Rule.  *See* 42 C.F.R. § 412.230(a)(5)(iii).  The issue presented is whether the Board Reclassification Rule is based on a permissible interpretation of the Medicare statute.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court.  A related case is currently pending before the United States Court of Appeals for the Second Circuit:  *Lawrence & Memorial Hospital v. Burwell*, No. 15-164 (2d Cir.).

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

#### 1.    Medicare's Prospective Payment System and Wage Indices

The Medicare program is established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, to pay for medical care for the elderly and disabled. Part A of the Medicare program, which is at issue in this case, pays for inpatient hospital and related post-hospital benefits.

Medicare reimburses hospitals for the operating costs of inpatient hospital services through a prospective payment system. *See* 42 U.S.C. § 1395ww(d)(2). Under this system, the Centers for Medicare & Medicaid Services ("CMS") set a standardized federal payment rate "based on the average operating costs of inpatient hospital services." *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999); *see also* 42 U.S.C. § 1395ww(d)(2)(A)-(C). This standardized rate is then adjusted for a variety of factors, including a "wage index" that accounts for varying labor costs across the country. *See* 42 U.S.C. § 1395ww(d)(3)(E). The wage index compares the national average hospital wages with local average hospital wages. *Id.* "[T]he wage index has a significant effect on the amount of reimbursement a hospital receives." *Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 276 (3d Cir. 2002). A higher wage index corresponds to a higher reimbursement rate. A10 (Dist. Ct. Op. ("Op.")).

For wage-index purposes, Medicare classifies hospitals as "urban" or "rural," depending on their geographic location.  Hospitals located in rural areas receive a wage index that applies to all rural areas in their state.  A11 (Op.).  Hospitals in urban areas are assigned a wage index for the urban area in which they are physically situated.  *Id.*  Boundary lines are based on geographic areas—known as "Core Based Statistical Areas"—established by the Office of Management and Budget.  *Id.*  "Whether a hospital is considered located in an urban area or rural area can significantly impact a hospital's Medicare reimbursement."  *Id.*

## 2.    Geographic Reclassification

As originally enacted, the prospective payment system "yielded inequitable results for some hospitals."  *Robert Wood Johnson Univ. Hosp.*, 297 F.3d at 276.  In some cases, a hospital's wage index did not accurately reflect its labor costs.  For example, a hospital that competed for employees and resources with nearby hospitals in higher-cost areas nevertheless received the lower reimbursement rate for the geographic area to which the hospital was assigned.  *See id.*  To address this problem, Congress took several steps to allow a hospital to "reclassify" to a different area.  *See Athens Cmty. Hosp., Inc. v. Shalala*, 21 F.3d 1176, 1177-78 (D.C. Cir. 1994) (explaining history of geographic reclassification).

**Rural to Urban Reclassification.**  In 1987 and 1988, Congress amended the Medicare statute to allow certain rural hospitals to be treated as if they were located in

4

a nearby urban area.  42 U.S.C. § 1395ww(d)(8)(B).  These amendments applied only "to a limited number of hospitals," resulting in the denial of many reclassification requests.  55 Fed. Reg. 36,754, 36,755 (Sept. 6, 1990).

**The Medicare Geographic Classification Review Board.**    In 1989, Congress expanded hospitals' options for reclassification by creating the Medicare Geographic Classification Review Board ("Board").  Pub. L. No. 101–239, § 6003(h) (1989) (codified at 42 U.S.C. § 1395ww(d)(10)).  The Board may "change [a] hospital's geographic classification for purposes of determining" the hospital's wage index or standardized reimbursement rate.  42 U.S.C. § 1395ww(d)(10)(C)(i).  The Board has authority to reclassify a hospital from a rural area to an urban area; from a rural area to another rural area; or from an urban area to another urban area.  *See* 55 Fed. Reg. at 36,760.    This process is designed to assist a hospital that is "significantly disadvantaged by its geographic location."  65 Fed. Reg. 47,054, 47,088 (Aug. 1, 2000).  Board reclassifications become effective roughly one year after an application is filed, on the first day of the federal fiscal year (October 1), and they are valid for three years.  42 U.S.C. § 1395ww(d)(10)(D)(v); 42 C.F.R. § 412.274(b)(2).

Congress granted the Secretary of Health and Human Services broad authority to "publish guidelines to be utilized by the Board in rendering decisions on applications [for geographic classification]."  42 U.S.C. § 1395ww(d)(10)(D)(i); *see also* 65 Fed. Reg. at 47,088 ("Thus, under the statute, the Secretary has broad discretion to

determine when [Board] reclassification is appropriate . . . .").    The published guidelines include detailed requirements for reclassification, including proximity and average hourly wage criteria.  *E.g.*, 42 C.F.R. § 412.230(b), (d).  In general, hospitals in rural areas are subject to more relaxed reclassification requirements than hospitals in urban areas.  *See id.*  Hospitals that have been granted the additional designation of "rural referral center" receive even more favorable treatment in Board reclassifications.  *See id.* § 412.230(a)(3), (d)(3).  A rural referral center is a rural hospital that has operating characteristics similar to a typical urban hospital.  42 U.S.C. § 1395ww(d)(5)(C)(i).  Relevant characteristics include the number of hospital beds, the number of referrals to the hospital, the case-mix index, the number of discharges, and the qualifications of the hospital's medical staff.  *See* 42 C.F.R. § 412.96(a)-(c).

**Section 401 Redesignation.**  Ten years after establishing the Board, Congress created yet another mechanism for reclassification under Section 401 of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113, app. F, 113 Stat. 1501A-321 (codified at 42 U.S.C. § 1395ww(d)(8)(E)).  Section 401 allows certain hospitals in urban areas to redesignate to rural areas.  A hospital is eligible for redesignation under Section 401 if, *inter alia*, the hospital is located in an area that the State designates as rural, or the hospital would qualify as a rural referral center if it were located in a rural area.  42 U.S.C. § 1395ww(d)(8)(E)(ii).

Urban hospitals that redesignate as rural hospitals under this provision are known as "Section 401 hospitals."

Section 401 redesignation applies "[f]or purposes of" § 1395ww(d).  42 U.S.C. § 1395ww(d)(8)(E)(i).  The operative provision states that, "[f]or purposes of this subsection [(d)] . . . the Secretary shall treat [eligible] hospital[s] as being located in the rural area . . . of the State in which the hospital is located."  *Id.*  Section 401 thus applies when determining the hospital's prospective payment rate, which is based on a hospital's urban or rural status.  *See, e.g.*, § 1395ww(d)(3) ("Each such rate shall be determined for hospitals located in large urban, other urban, or rural areas . . . .").

Section 401 also allows hospitals to use their acquired rural status to seek additional designations under subsection (d), and these designations carry their own benefits.  For example, a rural hospital may be eligible to become a "sole community hospital," which could lead to higher Medicare reimbursements.  *See* 42 U.S.C. § 1395ww(d)(5)(D)(iii)(III) (listing criteria for sole community hospital, including that the hospital be "located in a rural area"); *see also id.* § 1395ww(d)(5)(D)(i).  Similarly, to earn status as a "rural referral center," discussed above, a hospital must first be classified as rural.  *Id.* § 1395ww(d)(5)(C)(i) ("A hospital which is classified as a rural hospital may appeal to the Secretary to be classified as a rural referral center . . . .").  Special rules apply to rural referral centers in a variety of circumstances, including when determining eligibility for Board reclassification, 42 C.F.R. § 412.230(a)(3),

(d)(3), calculating payments to hospitals that serve a disproportionate share of low-income patients, 42 U.S.C. § 1395ww(d)(5)(F)(xiv)(II), and determining eligibility for drug pricing programs, *id.* § 256b(a)(4)(O). Section 401 requires that the Secretary treat a hospital as rural when applying the statutory criteria for these designations. *See id.* § 1395ww(d)(8)(E)(i) (requiring the Secretary to treat Section 401 hospitals as rural "[f]or purposes of this subsection").

In Section 401, Congress also made conforming amendments to ensure that redesignated hospitals are considered rural for purposes of outpatient payments and for determining eligibility as a critical access hospital. *See* Pub. L. No. 106-113, app. F, tit IV, subtit. A § 401(b)(1), 113 Stat. 1501A-369 (codified at 42 U.S.C. § 1395l(t)(13)(A)); *id.* § 401(b)(2), 113 Stat. 1501A-369 (codified at 42 U.S.C. § 1395i-4(c)(2)(B)(i)).

### 3.    The Board Reclassification Rule

Shortly after the enactment of Section 401, the Secretary expressed "concern[] that [Section 401] might create an opportunity for some urban hospitals to take advantage of the [Board reclassification] process." 65 Fed. Reg. at 47,087. The Secretary explained that some urban hospitals may seek redesignation as rural under Section 401, and then attempt to use that newly acquired *rural* status to apply to the Board for reclassification to a different *urban* area. *Id.* The Secretary was concerned that these hospitals "might inappropriately seek to be treated as being located in a

rural area for some purposes and as being located in an urban area for other purposes." *Id.* at 47,087-88.

To close this potential loophole, the Secretary added an additional limitation to the Board's reclassification rules. The rule—referred to herein as the Board Reclassification Rule—bars a Section 401 hospital from leveraging its newly acquired rural status to seek reclassification before the Board. In its current form, the rule states:

> An urban hospital that has been granted redesignation as rural under § 412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the [Board] based on this acquired rural status for a year in which such redesignation is in effect.

42 C.F.R. § 412.230(a)(5)(iii). In other words, a Section 401 hospital cannot use its rural status to seek reclassification, if that reclassification would be effective when the hospital also has Section 401 status.

The Board Reclassification Rule does not apply if a Section 401 hospital cancels its rural status, so long as the rural designation "will cancel prior to the effective date of the [Board] decision." 70 Fed. Reg. 47,278, 47,444 (Aug. 12, 2005). In this circumstance, the hospital will be treated as urban in reclassification proceedings, because "it is physically located in an urban area and will no longer be in rural status upon the effective date of the [Board] decision." *Id.*

## B.    Factual Background and Prior Proceedings

1.    Geisinger Community Medical Center ("Geisinger") is a hospital in Scranton, Pennsylvania, that participates in Medicare.  *See* A233 (Provider Agreement)[2]; A234 (Section 401 Approval).  Geisinger is geographically located in the Scranton-Wilkes-Barre urban area.  A234 (Section 401 Approval); A235 (Section 401 Application).

In 2014, Geisinger underwent a series of steps in an apparent attempt to reclassify to a different urban area.  Geisinger preferred the Allentown-Bethlehem-Easton, Pennsylvania-New Jersey urban area ("Allentown area"), but it could not satisfy the Board's reclassification rules.  *See* A16 (Op.).  The rules required that as an urban hospital, Geisinger must be located 15 miles or less from the Allentown area, *see* 42 C.F.R. § 412.230(b)(1), but Geisinger was 27 miles away, A16 (Op.).  If Geisinger were a rural hospital, however, more relaxed proximity requirements would apply: Geisinger would only need to show that it was located 35 miles or less from the Allentown area.  *See* 42 C.F.R. § 412.230(b)(1).[3]  Geisinger also failed to satisfy the

---

[2] Geisinger was formerly known as Community Medical Center, which is the provider named in the 1987 Medicare provider agreement.  A233.

[3] Although a hospital that is a rural referral center "as of the date of the [Board's] review" is exempt from the proximity requirement, this exemption only allows the hospital to reclassify to "the urban area that is closest to the hospital."  42 C.F.R. § 412.230(a)(3)(i)-(ii).  Because Allentown is not the closest urban area, Geisinger must rely on the 35-mile rule for rural hospitals.  *See* A136 (Allentown Application) (relying on 35-mile rule).

minimum average hourly wage requirement for hospitals in its area. *Compare* A16 (Op.), *with* 42 C.F.R. § 412.230(d)(1)(iii)(C). If Geisinger could gain status as a rural referral center, however, it would be exempt from this requirement. 42 U.S.C. § 1395ww(d)(10)(D)(iii); 42 C.F.R. § 412.230(d)(3)(i).

To avail itself of the more preferable reclassification rules for rural hospitals and rural referral centers, Geisinger submitted two requests to CMS. Geisinger first requested to be designated from an urban to a rural hospital pursuant to Section 401. A235 (Section 401 Application). Then, based on its pending application for rural status, Geisinger requested that it be classified as a rural referral center. A238 (Rural Referral Center Application). CMS granted both requests: Geisinger was redesignated as a rural hospital under Section 401 effective June 11, 2014, A234 (Section 401 Approval), and Geisinger became a rural referral center effective July 1, 2014, A241-42 (Rural Referral Center Approval).

Shortly thereafter, Geisinger asked CMS to cancel its rural status effective the following year, on October 1, 2015. A243 (Cancellation Request).[4] CMS approved the request. A245 (Approval of Cancellation).

---

[4] CMS regulations provide that a rural referral center may cancel its rural classification only after it has been paid as a rural hospital "for at least one 12-month cost reporting period." 42 C.F.R. § 412.103(g)(2)(i)-(ii). The cancellation is "not effective . . . until the beginning of the Federal fiscal year following such 12-month cost reporting period." *Id.* § 412.103(g)(2)(ii).

2.    On August 28, 2014, Geisinger submitted two applications to the Board for reclassification as of October 1, 2015.  Geisinger's primary application sought reclassification to the Allentown area.  A129 (Allentown Application).  On this application, Geisinger identified itself as a rural hospital and relied on the 35-mile requirement that applies to rural hospitals.  A132, A136 (Allentown Application).  Geisinger also noted that it was designated as a rural referral center.  A134 (Allentown Application).

Geisinger also submitted a secondary application—which would be considered only if the primary application were denied—for reclassification to the East Stroudsburg, Pennsylvania area.  A155 (East Stroudsburg Application).  Unlike the Allentown application, the East Stroudsburg application did not depend on Geisinger's continued rural status under Section 401, and it acknowledged that Geisinger had cancelled its Section 401 status, effective October 1, 2015.  *See* A159, A175-76 (East Stroudsburg Application).  Geisinger's East Stroudsburg application relied on a rule that allows hospitals designated as rural referral centers on "the date of the [Board]'s review" to reclassify to the nearest urban area without satisfying proximity requirements.   42 C.F.R. § 412.230(a)(3)(i)-(ii); *see also* A161-62 (East Stroudsburg Application).[5]

---

[5] This special rule for rural referral centers looks at the hospital's current status on "the date of the [Board]'s review."  42 C.F.R. § 412.230(a)(3).  Therefore, the

12

3.     In September 2014, while its applications were pending before the Board, Geisinger filed the present action in district court.    A40-63 (Complaint). Geisinger claimed that the Board Reclassification Rule, which prevents Section 401 hospitals from using their rural status in Board reclassification proceedings, runs afoul of Section 401's directive that the Secretary "shall treat" Section 401 hospitals as rural for purposes of § 1395ww(d).    42 U.S.C. § 1395ww(d)(8)(E)(i); A60-61 (Compl.). Geisinger thus asserted that the Board Reclassification Rule violates the Medicare statute and the Administrative Procedure Act.    A60-61 (Compl.).    It sought a declaratory judgment and an injunction prohibiting enforcement of the Board Reclassification Rule with respect to Geisinger's reclassification applications.    A62 (Compl.).

4.     In December 2014, the district court granted summary judgment for the government defendants.    A3-33 (Op.).    The court applied the two-step process outlined in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).    At step one, the court held that Congress did not directly speak to "whether hospitals that have been redesignated as rural [under Section 401] must be eligible for geographic reclassification by the Board."    A23-24 (Op.).    The court explained that Section 401 is "silent" on this issue, and noted that a separate provision "expressly

proximity waiver applies regardless of whether the hospital's status as a rural referral center will cancel in the future.

13

grant[s] the Secretary broad discretion to develop guidelines for considering Board applications." *Id.* (citing 42 U.S.C. § 1395ww(d)(10)(D)(i)). Taken together, these two provisions "compel[led] the court to find that Geisinger cannot demonstrate the [Board Reclassification Rule] violates the plain meaning of Section 401." A24.

At the second step of the *Chevron* analysis, the court held that the Board Reclassification Rule is a reasonable interpretation of the statutory scheme. A29 (Op.). The court explained that "the Secretary decided to resolve the ambiguity in the statutes by promulgating a regulation that does away with any potential for inconsistent reclassifications of the same hospital for the same period, as well as the potential for unintended consequences." A28 (Op.). The court relied on the agency's extensive commentary in the final rule, which explained that "'it would be anomalous at best'" for an urban hospital that seeks redesignation as rural to "'subsequently claim that it is significantly disadvantaged by the rural status for which it applied and should be reclassified to an urban area.'" A27 (Op.) (quoting 65 Fed. Reg. at 47,088). The court also observed that the Secretary was concerned that "'some hospitals might inappropriately seek to be treated as being located in a rural area for some purposes,'" while being treated as urban for wage-index purposes. *Id.* "[E]ven if the plaintiff can point to other reasonable policy choices," the court concluded, the Secretary's decision to "avoid permitting a hospital to be treated as rural for some purposes and

14

as urban for others[,] allowing the hospital to receive inappropriate reimbursements," was not unreasonable.    A29 (Op.).    Moreover, the court noted, the Secretary considered alternative approaches and rejected them because "'they would still allow these hospitals to receive inappropriate payments.'"  A28 (Op.).[6]

5.      On February 23, 2015, the Board denied Geisinger's primary application for reclassification to the Allentown area and approved its secondary application for the East Stroudsburg area.    *See* Addendum ("Add.") 9-11 (Board Decision).[7] Consistent with the Board Reclassification Rule, the Board did not allow Geisinger to take advantage of its newly acquired rural status.  *See* 42 C.F.R. § 412.230(a)(5)(iii). Because Geisinger cancelled its Section 401 status, the Board considered Geisinger an urban hospital (*see* 70 Fed. Reg. at 47,444) that currently has status as a rural referral center.  *See* Add. 10-11.  Under the applicable rules, Geisinger failed to satisfy the proximity criteria for reclassification to Allentown.  *See* Add. 11.  An administrative appeal to the CMS Administrator must be filed within 15 days of the Board's decision. 42  C.F.R.  § 412.278(b)(1).    Congress  provided  that  "[t]he  decision  of  the

---

[6] The district court also held that the judicial review bar, which states that Board reclassification decisions "shall not be subject to judicial review," 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II), does not preclude review of Geisinger's claims.  *See* A16-18 (Op.).  The government does not appeal this ruling.

[7] Geisinger's reclassification to the East Stroudsburg area will increase the hospital's average hourly wage from $31.4587 to $35.3061, for a difference of nearly four dollars.  *See* Add. 10 (Board Decision).  Reclassification to Allentown would result in an average hourly wage of $35.3327—less than three cents more than East Stroudsburg.  *See* Add. 11 (Board Decision).

15

[Administrator] shall be final and shall not be subject to judicial review." 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).

## SUMMARY OF ARGUMENT

This case involves the intersection of two distinct mechanisms for geographic reclassification: redesignation under Section 401 and reclassification by the Medicare Geographic Classification Review Board. Each mechanism allows hospitals that are disadvantaged by their geographic location to reclassify to a different area. Board reclassification applies "for purposes of determining" a hospital's wage index or standardized reimbursement rate. 42 U.S.C. § 1395ww(d)(10)(C)(i). Section 401 redesignation allows an urban hospital to redesignate as rural "[f]or purposes of this subsection," which refers to subsection (d) of § 1395ww. Id. § 1395ww(d)(8)(E)(i). Geisinger argues that Section 401 unambiguously allows a hospital to take advantage of *both* reclassification procedures almost simultaneously.

Geisinger is incorrect. Congress did not directly address the relationship between Section 401 redesignation and Board reclassification, and it thus left a gap for the agency to fill. To resolve this ambiguity, the Secretary adopted the Board Reclassification Rule, which prohibits a Section 401 hospital from using its newly acquired rural status to seek Board reclassification. *See* 42 C.F.R. § 412.230(a)(5)(iii). As the district court correctly concluded, this rule is a reasonable interpretation of the statutory scheme and is not arbitrary and capricious.

16

**A.**    Congress did not directly address the interaction between the two reclassification mechanisms at issue in this case.  In statutory provisions relating to Board reclassification, Congress established the Board and granted the Secretary broad authority to "publish guidelines to be utilized by the Board in rendering decisions on applications" for reclassification.  42 U.S.C. § 1395ww(d)(10)(D)(i).  A decade later, Congress enacted a new reclassification mechanism under Section 401.  But nothing in Section 401 refers to Board reclassification or to the Secretary's authority to promulgate her own guidelines regarding reclassification.  Rather than addressing the relationship between these two mechanisms for reclassification, Congress left a gap for the agency to fill.

Contrary to Geisinger's arguments, the mandate that the Secretary "treat" Section 401 hospitals as rural "[f]or purposes of this subsection," 42 U.S.C. § 1395ww(d)(8)(E)(i), does not require the Secretary to allow hospitals to take advantage of both reclassification mechanisms.  Indeed, a mandate to treat hospitals as *rural* can reasonably be understood as a directive to treat Section 401 hospitals as rural for all purposes, and to prohibit the Secretary from reclassifying them as *urban* hospitals for wage-index purposes.

**B.**    The Secretary adopted the Board Reclassification Rule out of concern that some urban hospitals may attempt to "take advantage" of the Board reclassification process, resulting in "inappropriate payments" and creating

17

"inappropriate incentives" for hospitals to seek Section 401 status.   65 Fed. Reg. 47,054, 47,087, 47,089 (Aug. 1, 2000).   The Secretary properly determined that urban hospitals that voluntarily acquire rural status under Section 401 cannot subsequently reclassify with the Board in an effort to return to urban status and increase their Medicare reimbursement rate.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo. *Board of Trs. of Trucking Emps. of N.J. Welfare Fund, Inc.—Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 294 (3d Cir. 2004).   Under 5 U.S.C. § 706(2)(A), courts ask whether challenged agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   Courts must defer to an agency's "reasonable construction of [a] statute" it is charged with implementing, regardless of "whether or not it is the only possible interpretation or even the one a court might think best." *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2017 (2012) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 & n.11 (1984)).

# ARGUMENT

## THE BOARD RECLASSIFICATION RULE IS A REASONABLE INTERPRETATION OF THE RELATIONSHIP BETWEEN SECTION 401 AND THE BOARD RECLASSIFICATION PROCESS.

### A.     Section 401 Does Not Unambiguously Limit The Secretary's Authority To Establish Guidelines For Board Reclassification.

This case involves the intersection between two separate mechanisms for reclassification—Section 401 and the Board reclassification process. Congress has not directly addressed the relationship between these two reclassification methods, and has thus left a statutory gap for the Secretary to fill. *See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 299 (3d Cir. 2014) ("[W]here Congress has left a gap or ambiguity in a statute within an agency's jurisdiction, that agency has the power to fill in or clarify the relevant provisions.").

As the district court concluded, the Secretary has broad discretion to promulgate guidelines for the Board's reclassification process. A24 (Op.). Congress provided that "[t]he Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph." 42 U.S.C. § 1395ww(d)(10)(D)(i). Therefore, "Congress delegated to the Secretary the authority to determine the degree to which the Board's discretion should be limited." *Athens Cmty. Hosp., Inc. v. Shalala*, 21 F.3d 1176, 1179 (D.C. Cir. 1994); *see also* 65 Fed. Reg. 47,054, 47,087 (Aug. 1, 2000) ("The Secretary has extremely broad authority under

section 1886(d)(10) of the Act to establish criteria for reclassification under the [Board] process."). The Board Reclassification Rule at issue here, 42 C.F.R. § 412.230(a)(5)(iii), was promulgated pursuant to that authority. It is one of many regulations that specify "when [Board] reclassification is appropriate." 65 Fed. Reg. at 47,088; *see also* 42 C.F.R. § 412.230(a)(5) (listing "[l]imitations on redesignation" by the Board).

The Board Reclassification Rule addresses the intersection between two separate methods of reclassification—reclassification by the Board and redesignation under Section 401. The rule imposes a limitation on Board reclassification for § 401 hospitals. It provides that "[a]n urban hospital that has been granted redesignation as rural under [Section 401] cannot receive an additional reclassification by the [Board] based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 412.230(a)(5)(iii). In other words, an urban hospital that redesignates as rural under Section 401 cannot leverage its newly acquired rural status to reclassify to a different urban area. *See id.* The hospital still may seek reclassification before the Board, but only if it first cancels its Section 401 status. 70 Fed. Reg. 47,278, 47,444 (Aug. 12, 2005).[8]

---

[8] In the Board decisions cited by Geisinger (Br. 34-35), the Board applied urban-hospital rules because the hospitals had already cancelled their Section 401 status. *In re Moses Taylor Hosp.*, No. 14C0144, 2013 WL 2470295, *4 (H.C.F.A. Jan. 30, 2013) (noting that status as a rural hospital and rural referral center would cancel as of

20

The Board Reclassification Rule responds to the agency's "concern[] that [Section 401] might create an opportunity for some urban hospitals to take advantage of the [Board reclassification] process." 65 Fed. Reg. at 47,087. It ensures that urban hospitals do not improperly take a back-door approach to reclassify to a different urban area for wage-index purposes. *See id.* at 47,088. As the Secretary explained, "it would be anomalous at best for [an] urban hospital to subsequently claim that it is significantly disadvantaged by the rural status for which it applied," and thus seek reclassification to a different urban area. *Id.*

The rule also addresses the concern that hospitals "might inappropriately seek to be treated as being located in a rural area for some purposes and as being located in an urban area for other purposes." 65 Fed. Reg. at 47,087-88. The agency feared that a hospital with Section 401 status may desire to reap certain benefits available to rural hospitals, while simultaneously seeking reclassification as an urban hospital for the more limited purpose of setting its wage index and earning higher reimbursements. For example, rural hospitals receive a 30% increase in the number of allowable full-time residents for purposes of receiving Medicare payments for the indirect costs of

---

October 1, 2013); *In re Regional Hosp. of Scranton*, No. 14C0180, 2013 WL 2470296, *4 (H.C.F.A. Jan. 30, 2013) (same). Such hospitals are considered urban because they are "physically located in an urban area," and they "will [no] longer be in rural status upon the effective date of the [Board] decision." 70 Fed. Reg. at 47,444. That is also why the Board considered Geisinger urban when adjudicating its reclassification applications. *See* Add. 10-11 (Board Decision).

21

medical education. *See id.* at 47,088; 42 U.S.C. § 1395ww(d)(5)(B)(v); 42 C.F.R. § 412.105(f)(1)(iv)(A). Without the Board Reclassification Rule, a hospital may attempt to use its acquired rural status in connection with medical education payments while simultaneously receiving the wage index of an urban hospital. *See* 65 Fed. Reg. at 47,088. Similarly, a hospital could seek to maintain Section 401 rural status for the purpose of participating in a drug pricing program with favorable treatment for rural referral centers, *see* 42 U.S.C. § 256b(a)(4)(O), while simultaneously pursuing Board reclassification as an urban hospital for wage-index purposes. *See, e.g., Lawrence & Memorial Hosp. v. Sebelius*, 986 F. Supp. 2d 124, 130 (D. Conn. 2013). The Board Reclassification Rule prevents Section 401 hospitals from manipulating the reclassification process to have it both ways; Section 401 hospitals may maintain their rural status and the benefits that come with it, or they may cancel their rural status, be treated as urban, and proceed through the normal Board reclassification process.

Geisinger argues that a statutory provision regarding Section 401 status cabins the Secretary's discretion to promulgate reclassification guidelines for the Board. The provision states that "[f]or purposes of this subsection [§ 1395ww(d)], . . . the Secretary shall treat [Section 401] hospital[s] as being located in the rural area . . . of the State in which the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E)(i). But nothing in this provision unambiguously requires the Secretary to allow a hospital with acquired rural status to apply to the Board for reclassification to an urban area.

22

Indeed, Section 401 is silent regarding its relationship with the Board process and the Secretary's authority to promulgate reclassification guidelines.  Section 401 created a "mechanism, separate and apart from the [Board]" process, 65 Fed. Reg. at 47,087, and it did not amend—or even mention—the statutory provisions pertaining to Board reclassification.  As the district court correctly concluded, Section 401 "does not discuss the Board reclassification process at all, nor does it discuss the intersection of redesignation and geographic reclassification under the Medicare Act." A23 (Op.); *see also* 65 Fed. Reg. at 47,087 (noting that the statute does not "address the issue of interactions between changes in classification under section [401] and the [Board] reclassification process").  Nothing in Section 401 constrains the Secretary's broad discretion to establish criteria for Board reclassification.  "This is precisely the type of legislative gap-filling that [courts] entrust to an agency's sound discretion." *Santomenno*, 768 F.3d at 299.

Geisinger argues (Br. 20-25) that Section 401 extends to the Board reclassification process because the provision applies to "this subsection" (subsection (d) of 42 U.S.C. § 1395ww), which encompasses the statutory provisions establishing the Board and outlining its procedures.  Geisinger's interpretation is difficult to square with the purpose, structure and context of the relevant statutes.  And it is certainly not unambiguously clear that Congress intended to adopt that position.  *See Vineland Fireworks Co. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 544 F.3d 509, 517 n.12

23

(3d Cir. 2008) (where "Congress has not provided an 'unambiguously expressed intent'" as to the meaning of a statute, "*Chevron* deference applies, and we must give the agency's interpretation deference so long as it is a reasonable construction of the statute") (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

Applying Section 401's statutory directive to applications for Board reclassification is at odds with the purpose of reclassification, which is to gain a new status. Geisinger desires Board reclassification so that it can be treated as an urban hospital. The mandate to treat Section 401 hospitals as *rural* does not require the Secretary to reclassify eligible hospitals as *urban*. Nor does it require the Secretary to offer dual status to a Section 401 hospital by considering the hospital rural for some purposes, but urban for others. At a minimum, Section 401 does not unambiguously demand the reclassification that Geisinger seeks.

Geisinger's interpretation also overlooks the statutory structure and context, which indicate that Congress created two separate mechanisms for reclassification. Both mechanisms are, in effect, exceptions to the general rule that a hospital's reimbursement rate is tied to its geographic location. *See Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 276 (3d Cir. 2002) (explaining purpose of Board reclassification); *Athens Cmty. Hosp.*, 21 F.3d at 1177-78 (explaining history of geographic reclassification). Geisinger's approach would require the Secretary to

24

allow hospitals to take advantage of *both* reclassification procedures almost simultaneously, piling exception on top of exception.  Had Congress intended this result, it would have established a clearer link between the two mechanisms for reclassification.  Merely referencing "this subsection" does not create an unmistakable link between the two mechanisms, particularly when the relevant substantive rules for Board reclassification are found in the Code of Federal Regulations, not subsection (d).  *See* 42 C.F.R. § 412.230.  Given the numerous other potential applications of Section 401 to subsection (d), there is no reason to read Section 401 to encompass the Board reclassification process.  *See, e.g.*, 42 U.S.C. § 1395ww(d)(3) (prospective payment rate is determined based on urban or rural status); *id.* § 1395ww(d)(5)(C)(i) (designation as a rural referral center requires rural status); *id.* § 1395ww(d)(5)(D)(iii)(III) (hospital may be eligible for designation as a sole community hospital if "located in a rural area").

Geisinger's reliance on legislative history (Br. 33) is misplaced.  This Court has declined to consider legislative history at *Chevron* step one.  *United States v. Geiser*, 527 F.3d 288, 292 (3d Cir. 2008) ("[L]egislative history should not be considered at *Chevron* step one.").[9]  And even if the legislative history were considered, it does not lend

---

[9] Contrary to Geisinger's suggestion (Br. 32), the Supreme Court's recent decision in *Lawson v. FMR LLC*, 134 S. Ct. 1158 (2014), does not require a different result.  In *Lawson*, the four-justice plurality used legislative history solely to bolster its

clarity to the statutory scheme. *See Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 276 (3d Cir. 2013) (noting that legislative history should be considered "only if it 'shed[s] a *reliable* light on the enacting Legislature's understanding of otherwise ambiguous terms'") (emphasis added) (alteration in original) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)).

The select portions of the House Conference Report upon which Geisinger relies state that Section 401 hospitals "shall be eligible to apply to the [Board] for geographic reclassification to another area," and that "[t]he Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated." H.R. Rep. No. 106-479, at 512 (1999) (Conf. Rep.). But Section 401 says nothing about its impact on Board reclassification, and Congress previously—in a different statutory provision—delegated such issues to the Secretary, who promulgated extensive requirements for Board reclassification. *See San Bernardino Mountains Cmty. Hosp. Dist. v. Secretary of Health & Human Servs.*, 63 F.3d 882, 887 (9th Cir. 1995) (explaining that where "the Secretary's interpretations fall squarely within her statutorily granted discretion, legislative history such as the Senate committee report cannot defeat the regulation"); *Clinton Mem'l Hosp. v. Shalala*, 10 F.3d 854, 858 (D.C. Cir. 1993) ("It is far from clear to

---

textual analysis. *Id.* at 1169. The plurality did not discuss *Chevron*, nor did it purport to decide the proper role of legislative history in a *Chevron* analysis. *See id.*

us that anything in a Senate committee report—which is neither adopted by the House nor presented to the President—could condemn as impermissible an interpretation fitting squarely within the statutory language.") (citation omitted). Adopting Geisinger's analysis "would require the Court to rely on the conference report to expand on the clear terms of Section 401 and create a conflict with the challenged regulation where none exists on the face of the statute."  A25 (Op.) (quoting *Lawrence & Mem'l Hosp. v. Sebelius*, 986 F. Supp. 2d 124, 136 (D. Conn. 2013)); *accord Lawrence & Mem'l Hosp. v. Burwell*, No. 3:13cv1495, 2014 WL 7338859, *7 (D. Conn. Dec. 22, 2014) (rejecting "Plaintiff's invitation to afford greater weight to the legislative history than to the text of the statute itself").

The regulatory scheme is consistent with the overarching purpose identified in the legislative history, which was to allow urban hospitals to redesignate as rural and to receive additional designations available to rural hospitals.  As the House Conference Report explained, "Hospitals qualifying under [Section 401] shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers." H.R. Rep. No. 106-479, at 512.  A report from the Committee on Ways and Means similarly noted that Section 401 "would permit additional flexibility for hospitals to reclassify for purposes of becoming rural hospitals so that they may participate in Medicare as critical access or sole community hospitals."  H.R. Rep. No. 106-436, at

66 (1999) (Comm. Rep.).  The text of Section 401 allows urban-turned-rural hospitals to receive these designations and reap their benefits.  *See supra* at 7-8, 25.  It does not, however, require the Secretary to allow Section 401 hospitals to use the Board process to reclassify to a different urban area.

In sum, Congress established two separate mechanisms for reclassification, and it did not address the intersection between the two.  Section 401 did not amend the provisions regarding Board reclassification, and it does not unambiguously cabin the Secretary's discretion to promulgate guidelines for Board reclassification.  Therefore, the relevant question is whether the Board Reclassification Rule is a reasonable interpretation of the relationship between the two mechanisms for reclassification.

**B.    The Board Reclassification Rule Is Based On A Reasonable Interpretation Of The Relevant Statutory Provisions.**

As the Supreme Court has explained, a court defers to an agency's reasonable interpretation of a statute, "whether or not it is the only possible interpretation or even the one a court might think best."  *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2017 (2012) (citing *Chevron*, 467 U.S. at 843-44 & n.11).  *Chevron* deference is particularly appropriate "in cases that involve a 'complex and highly technical regulatory program,' such as Medicare, which 'require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns.'"  *Robert Wood Johnson Univ. Hosp.*, 297 F.3d at 282 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512

28

(1994)) (alterations in original). The district court correctly concluded that the Board Reclassification Rule is a reasonable interpretation of the relevant statutory scheme, and thus warrants *Chevron* deference. A27-29 (Op.).

The Secretary's thorough consideration of policy issues underscores the reasonableness of the Board Reclassification Rule. *See Lawrence & Mem'l Hosp.*, 2014 WL 7338859, at *8 ("[T]he Secretary's decision was deliberate, logical, and considered."). Shortly after the enactment of Section 401, the Secretary became "concerned that [Section 401] might create an opportunity for some urban hospitals to take advantage of the [Board] process." 65 Fed. Reg. at 47,087. The Secretary explained that some hospitals may "first seek[] to be reclassified as rural under [Section 401]" and thereby "receiv[e] the benefits afforded to rural hospitals," and then subsequently "seek reclassification through the [Board] back to the urban area for purposes of their standardized amount and wage index." *Id.* This strategy would allow these hospitals to be considered rural for some purposes while "also receiv[ing] the higher payments that might result from being treated as being located in an urban area." *Id.*

To address this concern, the Secretary considered the text of the relevant statutes and the underlying policy considerations, which led to the adoption of the Board Reclassification Rule. The Secretary explained that Congress vested the agency with broad discretion to determine when Board reclassification is appropriate, and

29

that Section 401 "did not enact any statutory amendments to limit that discretion in any way." 65 Fed. Reg. at 47,088. The Secretary noted that redesignated hospitals would continue to receive the benefits of Section 401 status, such as when qualifying for designation as a rural referral center, sole community hospital or critical access center, *id.* at 47,089. As discussed above, the Secretary's interpretation of the statutory scheme is consistent with the text, purpose, and structure of the statute.

As the Secretary further explained, the Board Reclassification Rule is consistent with the policy considerations underlying the Board process, which "permits a hospital to be reclassified from one geographic area to another if it is significantly disadvantaged by its geographic location" for payment purposes. 65 Fed. Reg. at 47,088. "[I]t would be illogical," the Secretary reasoned, "to permit a hospital that applied to be reclassified from urban to rural under section [401] because it was disadvantaged as an urban hospital to then utilize a process that was established to enable hospitals significantly disadvantaged by their rural or small urban location to reclassify to another urban location." *Id.* The Secretary determined that "it would be anomalous at best for the [Section 401] hospital to subsequently claim that it is significantly disadvantaged by the rural status for which it applied." *Id.*

In addition, the Secretary considered and rejected alternative policy options suggested by commenters in response to the proposed rule. 65 Fed. Reg. at 47,089; *see also* 65 Fed. Reg. 26,282, 26,308 (May 5, 2000). The Secretary acknowledged that

the other options "would limit to some degree the possible inappropriate incentives for hospitals to become rural under [Section 401]," but remained concerned that they may "still allow these hospitals to receive inappropriate payments, albeit on a more limited basis." 65 Fed. Reg. at 47,089; *see also United States v. McGee*, 763 F.3d 304, 315 (3d Cir. 2014) ("Rules represent important policy decisions, and should not be disturbed if this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute.") (internal quotation marks omitted). As another district court recently held, "[s]uch a deliberative and well-reasoned approach can hardly be considered arbitrary or capricious." *Lawrence & Mem'l Hosp.*, 2014 WL 7338859, at *9.

Geisinger makes only two arguments with respect to *Chevron* step two. Geisinger first repeats its legislative history arguments, arguing that the Secretary "ignore[d]" the House Conference Report. Br. 37. As discussed above, however, it is the House Conference Report that ignores the Secretary's discretion to promulgate guidelines regarding Board reclassification. *See supra* at 25-27. Moreover, the final rule discussed the legislative history at length. 65 Fed. Reg. at 47,087-89.[10] In any event, it was not unreasonable for the Secretary to choose a different policy alternative that is

---

[10] Based on the historical context of the legislative statement, the Secretary concluded that the statement was intended to provide more favorable treatment to a certain category of hospitals that had lost their status as rural referral centers. 65 Fed. Reg. at 47,089. The Secretary thus adopted a separate policy, which reinstated those hospitals to their former status. *Id.*

31

consistent with the text, purpose, and structure of the statutory scheme. While "[u]nenacted statutory text certainly *may* inform an agency's interpretation of an ambiguous" statute, the agency is under no obligation to afford it "dispositive weight." *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 789 (D.C. Cir. 2012).

Next, Geisinger argues (Br. 37) that it is unreasonable for the Secretary to distinguish between geographically rural hospitals and hospitals that acquire rural status through Section 401. As the district court concluded, however, "there is a significant difference" between the two: "The latter hospital voluntarily obtained its rural status, whereas the former did not." A28-29 (Op.). It is one thing to allow "a hospital which is geographically located in a rural area and is significantly disadvantaged by its geographic location" to seek Board reclassification to an urban area "in order to be paid more appropriately." A29. It is quite another to allow "a hospital which is geographically located in an urban area to reclassify [under Section 401] to a rural area[,] claiming that it was disadvantaged as an urban hospital," and then to use that voluntarily acquired rural status "to reclassify under another process which was established to allow hospitals which are significantly disadvantaged by their rural status to reclassify to another urban location." *Id.*; *see also* 65 Fed. Reg. at 47,087. The Secretary's approach is fully consistent with the statute and with the policy considerations underlying the Board process.

32

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

BENJAMIN C. MIZER
 *Acting Assistant Attorney General*

PETER J. SMITH
 *United States Attorney*

MICHAEL S. RAAB
 *(202) 514-4053*

/s/ Tara S. Morrissey
TARA S. MORRISSEY
 D.C. Bar No. 991019
 *(202) 353-9018*
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7261*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue, NW*
 *Washington, DC  20530*

MARCH 2015

## COMBINED CERTIFICATIONS

I hereby certify that:

1.      Counsel for the appellees are federal government attorneys and are not required to be members of the Bar of this Court.

2.      This brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,396 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

3.      On March 4, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by causing an electronic copy to be filed using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

4.      The text of the hard copy of this brief and the text of the brief in electronic PDF format are identical.

5.      This document was scanned for viruses using Microsoft Forefront Client Security, Version 1.193.1582.0, and no virus was detected.

/s/ Tara S. Morrissey
Tara S. Morrissey
*Counsel for Defendants-Appellees*

**ADDENDUM**

# TABLE OF CONTENTS

**Page**

Public Law No. 106-113, app. F, tit. IV, subtit. A § 401............................................ Add. 1

42 U.S.C. 1395ww(d)(8)(E) (Section 401).................................................................. Add. 3

42 U.S.C. 1395ww(d)(10) (Board Reclassification) .................................................... Add. 4

42 C.F.R. § 412.230(a)(5)(iii) (Board Reclassification Rule)...................................... Add. 8

Decision of the Medicare Geographic Classification Review Board,
  re Geisinger – Community Medical Center,
  Provider No. 39-0001 (Feb. 23, 2015) .................................................................. Add. 9

**Public Law No. 106-113, app. F, tit. IV, subtit. A § 401 provides:**

SEC. 401. PERMITTING RECLASSIFICATION OF CERTAIN URBAN HOSPITALS AS RURAL HOSPITALS.

(a) IN GENERAL.—Section 1886(d)(8) (42 U.S.C. 1395ww(d)(8)) is amended by adding at the end the following new subparagraph:

"(E)(i) For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

"(ii) For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

"(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).

"(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

"(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

"(IV) The hospital meets such other criteria as the Secretary may specify.".

(b) CONFORMING CHANGES.—(1) Section 1833(t) (42 U.S.C. 1395l(t)), as amended by sections 201 and 202, is further amended by adding at the end the following new paragraph:

"(13) MISCELLANEOUS PROVISIONS.—

"(A) APPLICATION OF RECLASSIFICATION OF CERTAIN HOSPITALS.—If a hospital is being treated as being located in a rural area under section 1886(d)(8)(E), that hospital shall be treated under this subsection as being located in that rural area.".

(2) Section 1820(c)(2)(B)(i) (42 U.S.C. 1395i–4(c)(2)(B)(i)) is amended, in the matter preceding subclause (I), by inserting "or is treated as being located in a rural area pursuant to section 1886(d)(8)(E)" after "section 1886(d)(2)(D))".

(c) EFFECTIVE DATE.—The amendments made by this section shall become effective on January 1, 2000.

**42 U.S.C. § 1395ww(d)(8)(E) provides:**

(i) For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

(ii) For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).

(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

(IV) The hospital meets such other criteria as the Secretary may specify.

**42 U.S.C. § 1395ww(d)(10) provides:**

(A) There is hereby established the Medicare Geographic Classification Review Board (hereinafter in this paragraph referred to as the "Board").

(B)(i) The Board shall be composed of 5 members appointed by the Secretary without regard to the provisions of Title 5, governing appointments in the competitive service. Two of such members shall be representative of subsection (d) hospitals located in a rural area under paragraph (2)(D). At least 1 member shall be knowledgeable in the field of analyzing costs with respect to the provision of inpatient hospital services.

(ii) The Secretary shall make initial appointments to the Board as provided in this paragraph within 180 days after December 19, 1989.

(C)(i) The Board shall consider the application of any subsection (d) hospital requesting that the Secretary change the hospital's geographic classification for purposes of determining for a fiscal year—

(I) the hospital's average standardized amount under paragraph (2)(D), or

(II) the factor used to adjust the DRG prospective payment rate for area differences in hospital wage levels that applies to such hospital under paragraph (3)(E).

(ii) A hospital requesting a change in geographic classification under clause (i) for a fiscal year shall submit its application to the Board not later than the first day of the 13-month period ending on September 30 of the preceding fiscal year.

(iii)(I) The Board shall render a decision on an application submitted under clause (i) not later than 180 days after the deadline referred to in clause (ii).

(II) Appeal of decisions of the Board shall be subject to the provisions of section 557b[8] of Title 5. The Secretary shall issue a decision on such an appeal not later than 90 days after the date on which the appeal is filed. The decision of the Secretary shall be final and shall not be subject to judicial review.

---

[8] So in original. Probably should be section "557(b)".

(D)(i) The Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph, and shall include in such guidelines the following:

(I) Guidelines for comparing wages, taking into account (to the extent the Secretary determines appropriate) occupational mix, in the area in which the hospital is classified and the area in which the hospital is applying to be classified.

(II) Guidelines for determining whether the county in which the hospital is located should be treated as being a part of a particular Metropolitan Statistical Area.

(III) Guidelines for considering information provided by an applicant with respect to the effects of the hospital's geographic classification on access to inpatient hospital services by medicare beneficiaries.

(IV) Guidelines for considering the appropriateness of the criteria used to define New England County Metropolitan Areas.

(ii) Notwithstanding clause (i), if the Secretary uses a method for making adjustments to the DRG prospective payment rate for area differences in hospital wage levels under paragraph (3)(E) that is not based on the use of Metropolitan Statistical Area classifications, the Secretary may revise the guidelines published under clause (i) to the extent such guidelines are used to determine the appropriateness of the geographic area in which the hospital is determined to be located for purposes of making such adjustments.

(iii) Under the guidelines published by the Secretary under clause (i), in the case of a hospital which has ever been classified by the Secretary as a rural referral center under paragraph (5)(C), the Board may not reject the application of the hospital under this paragraph on the basis of any comparison between the average hourly wage of the hospital and the average hourly wage of hospitals in the area in which it is located.

(iv) The Secretary shall publish the guidelines described in clause (i) by July 1, 1990.

(v) Any decision of the Board to reclassify a subsection (d) hospital for purposes of the adjustment factor described in subparagraph (C)(i)(II) for fiscal year 2001 or any fiscal year thereafter shall be effective for a period of 3 fiscal

years, except that the Secretary shall establish procedures under which a subsection (d) hospital may elect to terminate such reclassification before the end of such period.

(vi) Such guidelines shall provide that, in making decisions on applications for reclassification for the purposes described in clause (v) for fiscal year 2003 and any succeeding fiscal year, the Board shall base any comparison of the average hourly wage for the hospital with the average hourly wage for hospitals in an area on—

(I) an average of the average hourly wage amount for the hospital from the most recently published hospital wage survey data of the Secretary (as of the date on which the hospital applies for reclassification) and such amount from each of the two immediately preceding surveys; and

(II) an average of the average hourly wage amount for hospitals in such area from the most recently published hospital wage survey data of the Secretary (as of the date on which the hospital applies for reclassification) and such amount from each of the two immediately preceding surveys.

(E)(i) The Board shall have full power and authority to make rules and establish procedures, not inconsistent with the provisions of this subchapter or regulations of the Secretary, which are necessary or appropriate to carry out the provisions of this paragraph.  In the course of any hearing the Board may administer oaths and affirmations.  The provisions of subsections (d) and (e) of section 405 of this title with respect to subpenas shall apply to the Board to the same extent as such provisions apply to the Secretary with respect to subchapter II of this chapter.

(ii) The Board is authorized to engage such technical assistance and to receive such information as may be required to carry out its functions, and the Secretary shall, in addition, make available to the Board such secretarial, clerical, and other assistance as the Board may require to carry out its functions.

(F)(i) Each member of the Board who is not an officer or employee of the Federal Government shall be compensated at a rate equal to the daily equivalent of the annual rate of basic pay prescribed for grade GS-18 of the General Schedule under section 5332 of Title 5 for each day (including travel time) during which such member is engaged in the performance of the duties of the Board.  Each member of the Board who is an officer or employee of the

United States shall serve without compensation in addition to that received for service as an officer or employee of the United States.

(ii) Members of the Board shall be allowed travel expenses, including per diem in lieu of subsistence, at rates authorized for employees of agencies under subchapter I of chapter 57 of Title 5, while away from their homes or regular places of business in the performance of services for the Board.

**42 C.F.R. § 412.230(a)(5)(iii) provides:**

An urban hospital that has been granted redesignation as rural under § 412.103 cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect.



# DEPARTMENT OF HEALTH AND HUMAN SERVICES
## MEDICARE GEOGRAPHIC CLASSIFICATION REVIEW BOARD
2520 Lord Baltimore Drive, Suite L

| Phone: 410-786-1174 | Baltimore MD 21244-2670 | FAX: 410-786-5298 |

CERTIFIED MAIL     FEB 2 3 2015

16C0152*

TO:    Besler Consulting
Scott Besler
3 Independence Way
Suite 201
Princeton, NJ 08540

RE:    Geisinger - Community Medical Center
Provider No. 39-0001
Federal Fiscal Year(s) Beginning – 10/01/15

SUBJECT:    Decision - Medicare Geographic Classification Review Board

The Medicare Geographic Classification Review Board (Board) has reviewed the hospital's application for redesignation in accordance with Section 1886(d)(10) of the Social Security Act and 42 C.F.R. § 412.230ff. The Board has considered the facts and the data submitted in support of its application. The Board hereby APPROVES the hospital's request for redesignation for the purpose of using the WAGE INDEX VALUE for the period October 1, 2015 through September 30, 2018. See the attached Case Summaries for additional information.

You may appeal this decision to the Administrator of the Centers for Medicare & Medicaid Services. The Office of the Attorney Advisor must receive your request for review no later than 15 days from the date of this notice. You should send your request to the following address:

Centers for Medicare & Medicaid Services
Office of the Attorney Advisor
Room C3-01-20
7500 Security Boulevard
Baltimore, MD 21244-1850

<u>Board Members Participating:</u>
Robert G. Eaton
Martin W. Hoover, Jr.
Charles R. Barker
Mark Stoddard
Steven Long

For the Board:

*Robert G. Eaton*

Robert G. Eaton
Chairman

cc:    Office of the Attorney Advisor, OSORA, OA, CMS
Division of Acute Care, Hospital & Ambulatory Policy Group, CM, CMS

*NOTE: Please reference case number in all communications.

Add. 9

# Wage Index Case Summary

FEB 23 2015

```
Case Number:..........................16C0152-2
Provider Name:........................Geisinger - Community Medical Center
Provider Number:......................39-0001
```

Hospital's Average Hourly Wage:........30.5214

Seeking Redesignation From:    **42540**

      **Urban**              **Scranton--Wilkes-Barre--Hazleton, PA**

      MSA Average Hourly Wage:    **31.4587**

Seeking Redesignation To:    **20700**

      **Urban**              **East Stroudsburg, PA**

      MSA Average Hourly Wage:    **35.3061**

Timely Filed:................................................**Yes**

Sole Community Hospital:.....................................**No**

Rural Referral Center:.......................................**Yes**

Have you ever been an RRC?:..................................**Yes**

SCH Status Lost Due to Prior MGCRB Reclassification?:.................**No**

In single hospital MSA?:.....................................**No**

Applying Under Access Rules?:................................**Yes**

If SCH/RRC, is Requested Area Closest?:......................**Yes**

Mileage to County Line:......................................**N/A**

Meets Proximity Criteria [42 CFR 412.230(b)]?:...............**N/A**

Meets the 106% / 108% Criteria [42 CFR 412.230(d)(1)(iii)(C)]?:.......**N/A**

Meets the 82% / 84% Criteria [42 CFR 412.230(d)(1)(iv)(E)]?:..........**Yes**
    30.5214 / 35.3061 x 100 = **86.4479%**

Meets All Necessary Criteria For Reclassification?:..................**Yes**

**Secondary Request**

# Wage Index Case Summary

FEB 2 3 2015

Case Number:...........................16C0152-1
Provider Name:.........................Geisinger - Community Medical Center
Provider Number:.......................39-0001


Hospital's Average Hourly Wage:........30.5214


Seeking Redesignation From:    **42540**

> **Urban**              **Scranton--Wilkes-Barre--
> Hazleton, PA**

> MSA Average Hourly Wage:    **31.4587**


Seeking Redesignation To:    **10900**

> **Urban**              **Allentown-Bethlehem-Easton,
> PA-NJ**

> MSA Average Hourly Wage:    **35.3327**


Timely Filed:...............................................**Yes**

Sole Community Hospital:.....................................**No**

Rural Referral Center:......................................**Yes**

Have you ever been an RRC?:.................................**Yes**

SCH Status Lost Due to Prior MGCRB Reclassification?:.......**No**

In single hospital MSA?:....................................**No**

Applying Under Access Rules?:...............................**No**

If SCH/RRC, is Requested Area Closest?:.....................**N/A**

Mileage to County Line:.....................................**27.30**

Meets Proximity Criteria [42 CFR 412.230(b)]?:..............**No ***

Meets the 106% / 108% Criteria [42 CFR 412.230(d)(1)(iii)(C)]?:.......**N/A**


Meets the 82% / 84% Criteria [42 CFR 412.230(d)(1)(iv)(E)]?:.........**Yes**
     **30.5214 / 35.3327 x 100 = 86.3828%**

Meets All Necessary Criteria For Reclassification?:.................**No**


**\* Criteria NOT Met**

**Primary Request**